# U.S. District Court
## District of North Dakota (Western)
## CIVIL DOCKET FOR CASE #: <u>1:17−cv−00014−DLH−CRH</u>
### *Internal Use Only*

| | |
|---|---|
| Continental Resources, Inc. v. North Dakota Board of University and School Lands et al | Date Filed: 01/11/2017 |
| | Date Terminated: 03/21/2023 |
| Assigned to: Chief Judge Daniel L. Hovland | Jury Demand: None |
| Referred to: Magistrate Judge Clare R. Hochhalter | Nature of Suit: 290 Real Property: Other |
| Case in other court:  USCA8, 21−01287 | Jurisdiction: U.S. Government Defendant |

McKenzie County, 27−02016−cv−00529

Cause: 28:1442 Petition for Removal

**<u>Plaintiff</u>**

| | | |
|---|---|---|
| **Continental Resources, Inc.** *an Oklahoma corporation* | represented by | **Lawrence Bender** Fredrikson & Byron, PA (Bismarck) 1133 College Drive, Suite 1000 Bismarck, ND 58501 701−221−8700 Email: <u>lbender@fredlaw.com</u> *LEAD ATTORNEY* *ATTORNEY TO BE NOTICED* |
| | | **Danielle M. Krause** Fredrikson & Byron, PA (Bismarck) 1133 College Drive, Suite 1000 Bismarck, ND 58501 701−221−8700 Email: <u>dkrause@fredlaw.com</u> *TERMINATED: 06/22/2018* |
| | | **David Lehn** Wilmer Cutler Pickering Hale and Dorr LLP 2100 Pennsylvania Ave, NW Washington, DC 20037 202−663−6910 Email: <u>david.lehn@wilmerhale.com</u> *PRO HAC VICE* *ATTORNEY TO BE NOTICED* |
| | | **David W. Ogden** Wilmer Cutler Pickering Hale and Dorr LLP 1875 Pennsylvania Avenue, NW Washington, DC 20006 202−663−6440 Email: <u>David.Ogden@wilmerhale.com</u> *PRO HAC VICE* |

*ATTORNEY TO BE NOTICED*

**Nathaniel B. Custer**
Wilmer Cutler Pickering Hale and Dorr
LLP
1875 Pennsylvania Avenue, NW
Washington, DC 20006
202–663–6013
Email: Nathaniel.Custer@wilmerhale.com
*TERMINATED: 06/07/2021*
*PRO HAC VICE*

**Paul R.Q. Wolfson**
Wilmer Cutler Pickering Hale and Dorr
LLP
1875 Pennsylvania Avenue, NW
Washington, DC 20006
202–663–6390
Email: Paul.Wolfson@wilmerhale.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**North Dakota Board of University and School Lands**    represented by    **Charles M. Carvell**
Pearce Durick PLLC
314 East Thayer Avenue
PO Box 400
Bismarck, ND 58502–0400
701–223–2890
Email: cmc@pearce–durick.com
*ATTORNEY TO BE NOTICED*

**David Paul Garner**
Office of the Attorney General
500 N. 9th St.
Bismarck, ND 58501
701–328–3640
Email: dpgarner@nd.gov
*ATTORNEY TO BE NOTICED*

**Hope L. Hogan**
Attorney General's Office
500 N. 9th Street
Bismarck, ND 58501–4509
701–328–3640
Email: hhogan@nd.gov
*TERMINATED: 11/14/2018*

**Jennifer L. Verleger**

Attorney General's Office
500 N. 9th Street
Bismarck, ND 58501–4509
701–328–3640
Email: jverleger@nd.gov
*ATTORNEY TO BE NOTICED*

**Defendant**

**United States of America**     represented by     **Shaun M. Pettigrew**
DOJ–Enrd
7600 Sand Point Way, NE
C/O Noaa, Damage Assessment
Seattle, WA 98115
202–532–5973
Email: shaun.pettigrew@usdoj.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**John Shaughnessy Most**
U.S. Department of Justice (DC – Env.)
Environment Enforcement Section
601 D Street, NW
Room 2121
Washington, DC 20004
202–616–3353
Fax: 202–305–0506
Email: john.most@usdoj.gov
*TERMINATED: 12/18/2019*

**Kent Rockstad**
U.S. ATTORNEY'S OFFICE
655 1 AVE N STE 250
FARGO, ND 58102
701–297–7400
Email: kent.rockstad@usdoj.gov
*TERMINATED: 04/24/2019*

| Date Filed | # | Page | Docket Text |
|---|---|---|---|
| 01/11/2017 | 1 | | NOTICE OF REMOVAL by United States of America from McKenzie County, case number 27–2016–CV–529. Filing fee waived. filed by United States of America. (Attachments: # 1 Summons, # 2 Complaint for Interpleader, # 3 Exhibit 1 – Schedule of Wells, # 4 Exhibit 2 – Disputed Lands, # 5 Notice of Assignment and Case Number, # 6 Affidavit of Service, # 7 Damand for Change of Judge, # 8 Certificate of Service, # 9 Reassignment Order, # 10 Notice of Motion for Admission of David W. Ogden Pro Hac Vice, # 11 Motion for Admission of David W. Ogden Pro Hac Vice, # 12 Affidavit of David W. Ogden in Support of Admission Pro Hac Vice, # 13 Certificate of Service, # 14 Notice of Motion for Admission of Paul R.Q. Wolfson Pro Hac Vice, # 15 Motion for Admission of Paul R.Q. Wolfson Pro Hac Vice, # 16 Affidavit of Paul R.Q. Wolfson in Support of Admission Pro |

| | | |
|---|---|---|
| | | Hac Vice, # <u>17</u> Certificate of Service, # <u>18</u> Notice of Filing Notice of Removal, # <u>19</u> Certificate of Service, # <u>20</u> McKenzie County Register of Actions, # <u>21</u> Civil Cover Sheet)(jt) (Entered: 01/11/2017) |
| 01/11/2017 | <u>2</u> | MOTION for Extension of Time to File Answer *and Brief* by United States of America. (Rockstad, Kent) (Entered: 01/11/2017) |
| 01/12/2017 | 3 | (Text Only) ORDER by Magistrate Judge Charles S. Miller, Jr. granting <u>2</u> Motion for Extension of Time to Answer. The United States of America shall have until 3/13/2017 to file an answer or otherwise respond to plaintiff's complaint. (BG) (Entered: 01/12/2017) |
| 01/31/2017 | <u>4</u> | NOTICE of Appearance by Shaun M. Pettigrew on behalf of United States of America (Pettigrew, Shaun) (Entered: 01/31/2017) |
| 02/13/2017 | <u>5</u> | ANSWER to Complaint (Notice of Removal) by North Dakota Board of University and School Lands. (Hogan, Hope) (Entered: 02/13/2017) |
| 02/23/2017 | <u>6</u> | MOTION for Leave to Appear Pro Hac Vice Attorney Paul R.Q. Wolfson (Filing fee $150, receipt number 117000529) by Continental Resources, Inc. (cjs) (Entered: 02/23/2017) |
| 02/23/2017 | <u>7</u> | MOTION for Leave to Appear Pro Hac Vice Attorney Nathaniel B. Custer (Filing fee $150, receipt number 117000529) by Continental Resources, Inc. (cjs) (Entered: 02/23/2017) |
| 02/23/2017 | <u>8</u> | MOTION for Leave to Appear Pro Hac Vice Attorney David W. Ogden (Filing fee $150, receipt number 117000529) by Continental Resources, Inc. (cjs) (Entered: 02/23/2017) |
| 02/24/2017 | <u>9</u> | ORDER by Magistrate Judge Charles S. Miller, Jr. granting <u>6</u> Motion for Leave to Appear Pro Hac Vice for Attorney Paul R.Q. Wolfson; granting <u>7</u> Motion for Leave to Appear Pro Hac Vice for Attorney Nathaniel B. Custer; granting <u>8</u> Motion for Leave to Appear Pro Hac Vice for Attorney David W. Ogden. (BG) NEF regenerated on 2/24/2017 to Attorney Ogden, Attorney Wolfson, and Attorney Custer (cjs). (Entered: 02/24/2017) |
| 03/06/2017 | <u>10</u> | MOTION for Extension of Time to File *Response to Complaint* by United States of America. (Pettigrew, Shaun) (Entered: 03/06/2017) |
| 03/07/2017 | 11 | (Text Only) ORDER by Magistrate Judge Charles S. Miller, Jr granting <u>10</u> Motion for Extension of Time to File. Defendant United States' answer/response due by 4/12/17. (ZE) (Entered: 03/07/2017) |
| 03/07/2017 | | Set/Reset Deadlines: United States of America answer due 4/12/2017. (cjs) (Entered: 03/07/2017) |
| 04/06/2017 | <u>12</u> | MOTION for Extension of Time to File Answer *or Otherwise Respond* by United States of America. (Attachments: # <u>1</u> Exhibit 1 – Email Correspondence between parties regarding extension, # <u>2</u> Exhibit 2 – Engrossed Senate Bill No. 2134 (S.B. 2134))(Pettigrew, Shaun) Modified on 4/10/2017 to add exhibit descriptions. (js) (Entered: 04/06/2017) |
| 04/07/2017 | <u>13</u> | RESPONSE to Motion re <u>12</u> MOTION for Extension of Time to File Answer *or Otherwise Respond Response in Opposition* filed by North Dakota Board of University and School Lands. (Hogan, Hope) (Entered: 04/07/2017) |

| 04/10/2017 | | | DOCKET CORRECTION re: 12 MOTION for Extension of Time to File Answer. Clerks office added descriptions to attachments. (js) (Entered: 04/10/2017) |
|---|---|---|---|
| 04/10/2017 | 14 | | ORDER by Chief Judge Daniel L. Hovland granting 12 Motion for Extension of Time to Answer. United States of America's response due 5/12/2017. (QH) (Entered: 04/10/2017) |
| 05/10/2017 | 15 | | MOTION *to Cancel Deadline and Set Status Conference* by United States of America. (Attachments: # 1 Exhibit S.B. 2134)(Pettigrew, Shaun) (Entered: 05/10/2017) |
| 05/10/2017 | 16 | | MOTION for Hearing by United States of America. See Document 15 . (js) (Entered: 05/11/2017) |
| 05/11/2017 | | | DOCKET CORRECTION re: 15 MOTION (Miscellaneous Relief). Multiple relief document filed as one relief. Clerks Office filed MOTION for Hearing at 16 . (js) (Entered: 05/11/2017) |
| 05/12/2017 | 17 | | ANSWER to Complaint (Notice of Removal) by United States of America. (Pettigrew, Shaun) (Entered: 05/12/2017) |
| 05/15/2017 | 18 | | ORDER by Magistrate Judge Charles S. Miller, Jr. finding as moot 15 Motion to Cancel Deadline; granting 16 Motion for Status Conference. (BG) (Entered: 05/15/2017) |
| 05/15/2017 | 19 | | NOTICE of Hearing: Status Conference set for 6/7/2017 at 10:00 AM by telephone before Magistrate Judge Charles S. Miller, Jr. The court shall initiate the conference call. (BG) (Entered: 05/15/2017) |
| 06/07/2017 | 20 | | (Text Only) Minute Entry for proceedings held before Magistrate Judge Charles S. Miller, Jr.: Status Conference held on 6/7/2017. (BG) (Entered: 06/07/2017) |
| 06/07/2017 | 21 | | (Text Only) ORDER: Status Conference set for 8/8/2017 at 10:00 AM by telephone before Magistrate Judge Charles S. Miller, Jr. The court shall initiate the conference call. By Magistrate Judge Charles S. Miller, Jr. (BG) (Entered: 06/07/2017) |
| 08/08/2017 | 22 | | (Text Only) Minute Entry for proceedings held before Magistrate Judge Charles S. Miller, Jr: Status Conference held on 8/8/2017. (ZE) (Entered: 08/08/2017) |
| 08/08/2017 | 23 | | ORDER: Scheduling Conference set for 9/22/2017 at 10:00 AM CST by telephone before Magistrate Judge Charles S. Miller Jr. by Magistrate Judge Charles S. Miller, Jr. Chambers will initiate the conference call. (ZE) (Entered: 08/08/2017) |
| 09/13/2017 | 24 | | MOTION to Amend/Correct *Complaint* by Continental Resources, Inc.. (Custer, Nathaniel) (Entered: 09/13/2017) |
| 09/13/2017 | 25 | | MEMORANDUM in Support re 24 MOTION to Amend/Correct *Complaint* filed by Continental Resources, Inc. (Attachments: # 1 Proposed Amended Complaint, # 2 Exhibit 1 to Amended Complaint, # 3 Exhibit 2 to Amended Complaint, # 4 Proposed Amended Complaint – Compare, # 5 Exhibit 1 – Compare, # 6 Exhibit 2 – Compare)(Custer, Nathaniel) Modified on 9/14/2017 |

| | | | to remove excess reference to Exhibit. (rh) (Entered: 09/13/2017) |
|---|---|---|---|
| 09/14/2017 | 26 | | (Text Only) ORDER by Magistrate Judge Charles S. Miller, Jr granting 24 Motion to Amend/Correct. Amended complaint shall be filed by 9/21/2017. (ZE) (Entered: 09/14/2017) |
| 09/14/2017 | 27 | | AMENDED COMPLAINT against All Defendants filed by Continental Resources, Inc.. (Attachments: # 1 Exhibit 1–Schedule of Wells, # 2 Exhibit 2–Schedule of Purported Royalty Obligations)(Custer, Nathaniel) Modified on 9/15/2017 to add exhibit numbers (cjs). (Entered: 09/14/2017) |
| 09/22/2017 | 28 | | (Text Only) Minute Entry for proceedings held before Magistrate Judge Charles S. Miller, Jr: Scheduling Conference held on 9/22/2017. (ZE) (Entered: 09/22/2017) |
| 09/22/2017 | 29 | | SCHEDULING ORDER by Magistrate Judge Charles S. Miller, Jr. Defendants' Answers/Responsive Pleadings due by 10/18/2017. (ZE) (Entered: 09/22/2017) |
| 09/22/2017 | | | Reset Deadline: Answer to Amended Complaint due 10/18/2017. (rm) (Entered: 09/25/2017) |
| 10/18/2017 | 30 | | ANSWER to 27 Amended Complaint, by North Dakota Board of University and School Lands.(Hogan, Hope) (Entered: 10/18/2017) |
| 10/18/2017 | 31 | | MOTION to Dismiss for Lack of Jurisdiction by United States of America. (Pettigrew, Shaun) (Entered: 10/18/2017) |
| 10/18/2017 | 32 | | MEMORANDUM in Support re 31 MOTION to Dismiss for Lack of Jurisdiction filed by United States of America. (Attachments: # 1 Exhibit Declaration of Larry David Janis, # 2 Exhibit Declaration of Joshua F. Alexander, # 3 Exhibit Declaration of Kimberly Werven)(Pettigrew, Shaun) (Entered: 10/18/2017) |
| 11/09/2017 | 33 | | MOTION for Extension of Time to File Response/Reply as to 29 Scheduling Order *and Brief* by North Dakota Board of University and School Lands. (Attachments: # 1 Brief)(Hogan, Hope) (Entered: 11/09/2017) |
| 11/09/2017 | 34 | | RESPONSE to Motion re 33 MOTION for Extension of Time to File Response/Reply as to 29 Scheduling Order *and Brief* filed by Continental Resources, Inc.. (Custer, Nathaniel) (Entered: 11/09/2017) |
| 11/13/2017 | 35 | | ORDER by Magistrate Judge Charles S. Miller, Jr granting 33 Motion for Extension of Time to File Response/Reply re 31 MOTION to Dismiss for Lack of Jurisdiction. North Dakota Board of University and School Lands' Response by 12/20/2017. Continental Resources, Inc.'s Response due by 1/19/2018. The United States' Reply due by 3/16/2018. (ZE) (Entered: 11/13/2017) |
| 11/14/2017 | | | Set/Reset Deadlines as to 31 MOTION to Dismiss for Lack of Jurisdiction . North Dakota Board of University and School Lands' response due by 12/20/2017 (cjs) (Entered: 11/14/2017) |
| 12/07/2017 | 36 | | NOTICE of Appearance by Jennifer L. Verleger on behalf of North Dakota Board of University and School Lands (Verleger, Jennifer) (Entered: 12/07/2017) |

| 12/19/2017 | 37 | | NOTICE of Appearance by Charles M. Carvell on behalf of North Dakota Board of University and School Lands (Carvell, Charles) (Entered: 12/19/2017) |
|---|---|---|---|
| 12/20/2017 | 38 | | RESPONSE to Motion re 31 MOTION to Dismiss for Lack of Jurisdiction filed by North Dakota Board of University and School Lands. (Attachments: # 1 Exhibit 1–Declaration of Drew Combs, # 2 Exhibit 2–Declaration of Rick Larson)(Carvell, Charles) (Entered: 12/20/2017) |
| 01/19/2018 | 40 | | RESPONSE to Motion re 31 MOTION to Dismiss for Lack of Jurisdiction filed by Continental Resources, Inc. (Attachments: # 1 Declaration of Dennis C. Roberts II, # 2 Exhibit 1 – Order to Report dated January 20, 2016, # 3 Exhibit 2 – Letter sent April 1, 2015, # 4 Exhibit 3 – Letter dated August 2, 2016, # 5 Exhibit 4 – Letter dated December 5, 2016)(cd) (Entered: 01/22/2018) |
| 01/22/2018 | | | DOCKET CORRECTION re: 39 Response to Motion. Exhibits should have been filed as separate attachments to main document. Clerk's office restricted access to document and re–filed with exhibit descriptions at 40 . (cd) Modified on 1/26/2018 to add link to document 39 and regenerate NEF. (rm) (Entered: 01/22/2018) |
| 03/16/2018 | 41 | | REPLY to Response to Motion re 31 MOTION to Dismiss for Lack of Jurisdiction filed by United States of America. (Attachments: # 1 Exhibit 1 – Appellants' Statement of Reasons in IBLA 2016–170)(Pettigrew, Shaun) (Entered: 03/16/2018) |
| 04/02/2018 | 42 | | MOTION for Leave to File *a Surreply* by North Dakota Board of University and School Lands. (Carvell, Charles) (Entered: 04/02/2018) |
| 04/02/2018 | 43 | | (Text Only) ORDER by Chief Judge Daniel L. Hovland granting 42 Motion for Leave to File Surreply. (JM) (Entered: 04/02/2018) |
| 04/16/2018 | 44 | | SURREPLY to 31 MOTION to Dismiss for Lack of Jurisdiction filed by North Dakota Board of University and School Lands. (Hogan, Hope) (Entered: 04/16/2018) |
| 06/21/2018 | 45 | | MOTION to Withdraw as Attorney *for Danielle M. Krause* by Continental Resources, Inc.. (Bender, Lawrence) (Entered: 06/21/2018) |
| 06/22/2018 | 46 | | (Text Only) ORDER by Magistrate Judge Charles S. Miller, Jr. granting 45 Motion to Withdraw as Attorney. Attorney Danielle M. Krause terminated. (BG) (Entered: 06/22/2018) |
| 11/09/2018 | 47 | | MOTION to Withdraw as Attorney *Hope L Hogan* by North Dakota Board of University and School Lands. (Hogan, Hope) (Entered: 11/09/2018) |
| 11/14/2018 | 48 | | (Text Only) ORDER by Magistrate Judge Charles S. Miller, Jr. granting 47 Motion to Withdraw as Attorney. Attorney Hope L. Hogan terminated. (BG) (Entered: 11/14/2018) |
| 12/31/2018 | 49 | | ORDER by Chief Judge Daniel L. Hovland denying 31 Motion to Dismiss for Lack of Jurisdiction (NH) (Entered: 12/31/2018) |
| 01/04/2019 | 50 | | ORDER re submission of revised scheduling plan and for scheduling conference. Scheduling conference set for 1/24/2019 at 10:00 AM by |

| | | | |
|---|---|---|---|
| | | | telephone before Magistrate Judge Charles S. Miller, Jr. By Magistrate Judge Charles S. Miller, Jr. (BG) (Main Document 50 replaced on 1/4/2019 to correct date in order) (cjs). Regenerated on 1/4/2019 (cjs). (Entered: 01/04/2019) |
| 01/08/2019 | 51 | | MOTION to Stay *ACTION DUE TO LAPSE OF APPROPRIATIONS* by United States of America. (Rockstad, Kent) (Entered: 01/08/2019) |
| 01/10/2019 | 52 | | ORDER by Magistrate Judge Charles S. Miller, Jr. granting 51 Motion to Stay ACTION DUE TO LAPSE OF APPROPRIATIONS. (BG) (Entered: 01/10/2019) |
| 01/10/2019 | | | Deadlines and Hearings Terminated. Scheduling conference set for 1/24/2019 is canceled. (BG) (Entered: 01/10/2019) |
| 01/28/2019 | 53 | | NOTICE by United States of America *OF RESTORATION OF APPROPRIATIONS* (Rockstad, Kent) (Entered: 01/28/2019) |
| 01/28/2019 | 54 | | MOTION for Scheduling Conference by United States of America. See document 53 . (cjs) (Entered: 01/29/2019) |
| 01/30/2019 | 55 | | ORDER granting 54 MOTION for Scheduling Conference. The stay is lifted and a Scheduling Conference is set for 3/18/2019 at 10:00 AM by telephone before Magistrate Judge Charles S. Miller, Jr. By Magistrate Judge Charles S. Miller, Jr. (BG) (Entered: 01/30/2019) |
| 02/11/2019 | 56 | | (Text Only) ORDER REASSIGNING CASE by Chief Judge Daniel L. Hovland. Case reassigned to Magistrate Judge Clare R. Hochhalter, as referral judg, for all further proceedings. Magistrate Judge Charles S. Miller, Jr no longer assigned to the case, as referral judge. (kmk) (Entered: 02/11/2019) |
| 02/11/2019 | | | Reset Hearings: Scheduling Conference set for 3/18/2019 at 10:00 AM by telephone before Magistrate Judge Clare R. Hochhalter. (Change as to Judge only). (kmk) (Entered: 02/11/2019) |
| 03/12/2019 | 57 | | MOTION for Extension of Time to File *Scheduling Proposal and Participate in Scheduling Conference* by North Dakota Board of University and School Lands. (Carvell, Charles) (Entered: 03/12/2019) |
| 03/13/2019 | 58 | | ORDER by Magistrate Judge Clare R. Hochhalter granting 57 Motion for Extension of Time to File. Proposed scheduling/discovery plan due 4/12/2019. Scheduling conference reset for 4/15/2019 at 10:00 AM by telephone before Magistrate Judge Clare R. Hochhalter. (GD) (Main Document 58 replaced on 3/13/2019 to correct typographical error and to add time of Scheduling Conference) (am). Modified to correct Judge's name and to add time of Scheduling Conference to the docket entry on 3/13/2019. NEF regenerated (am). (Entered: 03/13/2019) |
| 03/13/2019 | | | Reset Hearings: Scheduling Conference set for 4/15/2019 at 10:00 AM by telephone before Magistrate Judge Clare R. Hochhalter. (am) (Entered: 03/13/2019) |
| 04/15/2019 | 59 | | (Text Only) Minute Entry for proceedings held before Magistrate Judge Clare R. Hochhalter: Scheduling Conference held on 4/15/2019. (BG) (Entered: 04/15/2019) |

| | | | |
|---|---|---|---|
| 04/15/2019 | 60 | | ORDER: Status Conference set for 9/20/2019 at 10:00 AM in Judge Hochhalter's Conference Room (Bismark) before Magistrate Judge Clare R. Hochhalter. By Magistrate Judge Charles S. Miller, Jr. (BG) (Entered: 04/15/2019) |
| 04/15/2019 | 61 | | ORDER adopting proposed case schedule by Magistrate Judge Clare R. Hochhalter. Land Board's pleadings setting forth its claim to the stake are due by 6/14/2019. The United States shall assert its claims, if any, consistent with the Court's previous order by 8/13/2019. This matter shall be stayed following the United States' 8/13/2019 filing. The parties shall submit a status report by 9/19/2019. A status conference is set for 9/20/2019 before the Magistrate Judge.(BG) (Entered: 04/15/2019) |
| 04/17/2019 | 62 | | NOTICE of Appearance by John Shaughnessy Most on behalf of United States of America (Most, John) (Entered: 04/17/2019) |
| 04/18/2019 | 63 | | MOTION to Amend/Correct 61 Order, by Continental Resources, Inc.. (Attachments: # 1 Exhibit Proposed Order)(Bender, Lawrence) (Entered: 04/18/2019) |
| 04/22/2019 | 64 | | ORDER by Magistrate Judge Clare R. Hochhalter granting 63 Motion to Amend/Correct Order. (BG) (Entered: 04/22/2019) |
| 04/24/2019 | 65 | | NOTICE by United States of America *Withdrawal of Counsel* (Rockstad, Kent) (Entered: 04/24/2019) |
| 06/14/2019 | 66 | | AMENDED ANSWER to 27 *Amended Complaint with Statement of Claim* by North Dakota Board of University and School Lands. (Carvell, Charles) Modified on 6/17/2019 to add link (lh). (Entered: 06/14/2019) |
| 06/17/2019 | | | DOCKET CORRECTION re: 66 Amended Answer. Clerk's office added link to 27 Amended Complaint. (lh) (Entered: 06/17/2019) |
| 08/01/2019 | 67 | | (Text Only) ORDER: Status Conference REset for 10/11/2019 at 10:00 AM in Judge Hochhalter's Conference Room (Bismarck) before Magistrate Judge Clare R. Hochhalter. By Magistrate Judge Clare R. Hochhalter. (Previously set for 9/20/2019) (BG) (Entered: 08/01/2019) |
| 08/13/2019 | 68 | | MOTION for Extension of Time to File *Seeking Additional Time to Plead and Assert Affirmative Claims* by United States of America. (Attachments: # 1 proposed order)(Most, John) (Entered: 08/13/2019) |
| 08/13/2019 | 69 | | (Text Only) ORDER by Chief Judge Daniel L. Hovland granting 68 Motion for Extension of Time to File. The United States shall have until August 27, 2019 to plead and assert its affirmative claims. (MM) (Entered: 08/13/2019) |
| 08/27/2019 | 70 | | ANSWER to 27 Amended Complaint asserting the United States' affirmative claim to the stake in interpleader against United States of America. (Attachments: # 1 Exhibit N. Dakota's "State of Reasons" before Interior Board of Land Appeals, # 2 Exhibit N.D.C.C. § 61–33.1, # 3 Exhibit State Court Decision in Sorum v. N. Dak., No. 09–2018–CV–89)(Most, John) Modified on 8/29/2019 to remove cross–claim and clarify docket text. (js) (Entered: 08/27/2019) |
| 08/29/2019 | | | DOCKET CORRECTION re: 70 ANSWER. Clerks office removed CROSSCLAIM from docket text and noted just the affirmative claim. (js) |

| | | | |
|---|---|---|---|
| | | | (Entered: 08/30/2019) |
| 10/03/2019 | 71 | | MOTION to Continue *October 11, 2019 Status Conference* by United States of America and North Dakota Board of University and School Lands. (Most, John) Modified to add additional filer on 10/4/2019 (pb). (Entered: 10/03/2019) |
| 10/03/2019 | 72 | | *RESTRICTED – WRONG EVENT SELECTED* MOTION to Continue *Memorandum in Support of Motion to Continue October 11, 2019 Status Conference with Update on Settlement Progress* by United States of America. (Most, John) Modified to restrict access on 10/4/2019 (pb). (Entered: 10/03/2019) |
| 10/03/2019 | 73 | | MEMORANDUM in Support re 71 MOTION to Continue *October 11, 2019 Status Conference* filed by North Dakota Board of University and School Lands, United States of America. (pb) (Entered: 10/04/2019) |
| 10/04/2019 | | | DOCKET CORRECTION re: 71 Motion to Continue. Modified entry to add additional filer (North Dakota Board of University and School Lands); re: 72 Motion to Continue. Wrong event selected. Clerk's office restricted access to document and re–filed as Memorandum in Support at 73 . (pb) (Entered: 10/04/2019) |
| 10/04/2019 | 74 | | (Text Only) ORDER granting 71 MOTION to Continue *October 11, 2019 Status Conference*. Status Conference REset for 1/13/2020 at 09:00 AM by telephone before Magistrate Judge Clare R. Hochhalter. (Previously set for October 11, 2019). By Magistrate Judge Clare R. Hochhalter. (JS) (Entered: 10/04/2019) |
| 12/18/2019 | 75 | | NOTICE of Substitution of Attorney by John Shaughnessy Most on behalf of United States of America (Most, John) (Entered: 12/18/2019) |
| 01/13/2020 | 76 | | (Text Only) Minute Entry for proceedings held before Magistrate Judge Clare R. Hochhalter: Status Conference held on 1/13/2020. (BG) (Entered: 01/13/2020) |
| 01/13/2020 | 77 | | ORDER: Status Conference set for 4/7/2020 at 9:00 AM by telephone before Magistrate Judge Clare R. Hochhalter. By Magistrate Judge Clare R. Hochhalter. (BG) (Entered: 01/13/2020) |
| 04/06/2020 | 78 | | STATUS REPORT by United States of America. (Pettigrew, Shaun) (Entered: 04/06/2020) |
| 04/07/2020 | 79 | | (Text Only) Minute Entry for proceedings held before Magistrate Judge Clare R. Hochhalter: Status Conference held on 4/7/2020. (JS) (Entered: 04/07/2020) |
| 04/07/2020 | 80 | | ORDER Re: Briefing Schedule by Magistrate Judge Clare R. Hochhalter. (JS) (Entered: 04/07/2020) |
| 05/07/2020 | 81 | | MOTION for Partial Summary Judgment by United States of America. (Pettigrew, Shaun) (Entered: 05/07/2020) |
| 05/07/2020 | 82 | | MEMORANDUM in Support re 81 MOTION for Partial Summary Judgment filed by United States of America. (Attachments: # 1 Declaration of Joshua F. Alexander, # 2 Ex. A Corps of Engineers fact sheet, # 3 Ex. B original survey |

| | | | |
|---|---|---|---|
| | | | plat, # 4 Ex. C Corps of Engineers segment maps, # 5 Ex. D letter requesting supplemental plats, # 6 Ex. E investigation reports for supplemental plats part 1, # 7 Ex. E investigation reports for supplemental plats part 2, # 8 Ex. F special instructions and investigation reports for Corps segment maps, # 9 Ex. G June 1952 letter from the Secretary of the Army, # 10 Ex. H July 1952 memo from the BLM director, # 11 Ex. I special instructions for supplemental plats, # 12 Ex. J 2009 Manual of Surveying Instructions part 1, # 13 Ex. J 2009 Manual of Surveying Instructions part 2, # 14 Ex. K Federal Register notices, # 15 Ex. L table of leases, # 16 Ex. M August 2015 letter from BLM to Continental, # 17 Ex. N maps depicting leases on historic Missouri River)(Pettigrew, Shaun) (Entered: 05/07/2020) |
| 05/07/2020 | 83 | | MOTION for Partial Summary Judgment by North Dakota Board of University and School Lands. (Carvell, Charles) (Entered: 05/07/2020) |
| 05/07/2020 | 84 | | MEMORANDUM in Support re 83 MOTION for Partial Summary Judgment filed by North Dakota Board of University and School Lands. (Attachments: # 1 Declaration of David Shipman)(Carvell, Charles) Modified on 5/8/2020 to remove excess docket text (cjs). (Entered: 05/07/2020) |
| 06/05/2020 | 85 | | RESPONSE to Motion re 81 MOTION for Partial Summary Judgment filed by North Dakota Board of University and School Lands. (Carvell, Charles) (Entered: 06/05/2020) |
| 06/05/2020 | 86 | | AFFIDAVIT *(Declaration)* of Patrick Fridgen re 85 Response to Motion by North Dakota Board of University and School Lands. (Attachments: # 1 Exhibit 1 Ordinary High Water Mark Delineation Guidelines)(Carvell, Charles) (Entered: 06/05/2020) |
| 06/05/2020 | 87 | | RESPONSE to Motion re 83 MOTION for Partial Summary Judgment filed by United States of America. (Pettigrew, Shaun) (Entered: 06/05/2020) |
| 06/12/2020 | 88 | | REPLY to Response to Motion re 81 MOTION for Partial Summary Judgment filed by North Dakota Board of University and School Lands. (Carvell, Charles) (Entered: 06/12/2020) |
| 06/12/2020 | 89 | | REPLY to Response to Motion re 81 MOTION for Partial Summary Judgment filed by United States of America. (Pettigrew, Shaun) (Entered: 06/12/2020) |
| 06/12/2020 | 90 | | AFFIDAVIT *(Declaration)* of Shaun M. Pettigrew re 89 Reply to Response to Motion by United States of America. (Attachments: # 1 Exhibit 1 Emails dated April 2–3, 2020)(Pettigrew, Shaun) (Entered: 06/12/2020) |
| 06/12/2020 | 91 | | AFFIDAVIT *(Second Declaration)* of Joshua F. Alexander re 89 Reply to Response to Motion by United States of America. (Attachments: # 1 Exhibit A Letter from BLM dated May 12, 2016, # 2 Exhibit B FOIA request dated May 2, 2016, # 3 Exhibit C Emails dated May 5, 2016, # 4 Exhibit D FOIA production letter dated May 13, 2016, # 5 Exhibit E FOIA production letter dated October 19, 2016)(Pettigrew, Shaun) (Entered: 06/12/2020) |
| 12/08/2020 | 92 | | ORDER by Judge Daniel L. Hovland granting 81 Motion for Partial Summary Judgment; denying 83 Motion for Partial Summary Judgment. (MM) (Entered: 12/08/2020) |
| 02/05/2021 | 93 | | *RESTRICTED – WRONG EVENT SELECTED* NOTICE OF APPEAL as to 92 Order on Motion for Partial Summary Judgment, by North Dakota Board |

| | | | |
|---|---|---|---|
| | | | of University and School Lands. Filing fee $505. (Carvell, Charles) Modified on 2/5/2021 to restrict access (mf). (Entered: 02/05/2021) |
| 02/05/2021 | 94 | | NOTICE OF INTERLOCUTORY APPEAL as to 92 Order on Motion for Partial Summary Judgment, by North Dakota Board of University and School Lands. Filing fee $ 505 Receipt ANDDC−2114211. (mf) (Entered: 02/05/2021) |
| 02/05/2021 | | | DOCKET CORRECTION re: 93 Notice of Appeal. Wrong event selected. Clerk's office restricted access to document and re−filed as Notice of Interlocutory Appeal at 94 . (mf) (Entered: 02/05/2021) |
| 02/05/2021 | 95 | | Transmittal of Notice of Appeal Supplement to 8th Circuit Court of Appeals re 94 Notice of Interlocutory Appeal (mf) (Entered: 02/05/2021) |
| 02/08/2021 | | | USCA Case Number 21−1287 for 94 Notice of Interlocutory Appeal. (jb) (Entered: 02/08/2021) |
| 06/04/2021 | 96 | | MOTION to Withdraw as Attorney *for Nathaniel Custer* by Continental Resources, Inc.. (Attachments: # 1 Proposed Order)(Custer, Nathaniel) (Entered: 06/04/2021) |
| 06/07/2021 | 97 | | (Text Only) ORDER by Magistrate Judge Clare R. Hochhalter granting 96 Motion to Withdraw as Attorney. Attorney Nathaniel B. Custer terminated from case. (JS) (Entered: 06/07/2021) |
| 06/08/2021 | 98 | | USCA JUDGMENT as to 94 Notice of Interlocutory Appeal filed by North Dakota Board of University and School Lands. The Motion to Dismiss Case is granted, the appeal is dismissed for lack of jurisdiction, and the Motion for Extension of Time is denied as moot. (jb) (Entered: 06/08/2021) |
| 08/04/2021 | 99 | | MANDATE of USCA as to 94 Notice of Interlocutory Appeal filed by North Dakota Board of University and School Lands (jb) (Entered: 08/04/2021) |
| 08/17/2021 | 100 | | ORDER of USCA as to 94 Notice of Interlocutory Appeal filed by North Dakota Board of University and School Lands. Attorney Paul Reinherz Wolfson is granted leave to withdraw as counsel from this case. (mf) (Entered: 08/18/2021) |
| 09/03/2021 | 101 | | MOTION to Appear Pro Hac Vice Attorney David Lehn (Filing fee $150, receipt number ANDDC−2254749) by Continental Resources, Inc.. (Lehn, David) Modified on 9/7/2021 to add receipt number (mf) (Entered: 09/03/2021) |
| 09/07/2021 | 102 | | (Text Only) ORDER by Magistrate Judge Clare R. Hochhalter granting 101 Motion to Appear Pro Hac Vice for Attorney David Lehn. (mf) (Entered: 09/07/2021) |
| 02/22/2022 | 103 | | STATUS REPORT *(Joint)* by United States of America. (Pettigrew, Shaun) (Entered: 02/22/2022) |
| 02/23/2022 | 104 | | ORDER re briefing schedule. North Dakota's summary judgment motion due by 5/02/2022. The United States' cross−motion for summary judgment due by 5/23/2022. By Magistrate Judge Clare R. Hochhalter.(BG) (Entered: 02/23/2022) |
| 02/24/2022 | | | |

| | | | |
|---|---|---|---|
| | | | Set/Reset Scheduling Order Deadlines: Dispositive Motions due by 5/2/2022. (mf) (Entered: 02/24/2022) |
| 05/02/2022 | 105 | | MOTION for Partial Summary Judgment by North Dakota Board of University and School Lands. (Carvell, Charles) (Entered: 05/02/2022) |
| 05/02/2022 | 106 | | MEMORANDUM in Support re 105 MOTION for Partial Summary Judgment filed by North Dakota Board of University and School Lands. (Attachments: # 1 Declaration of Charles Carvell, # 2 Exhibit 1, NDIC Order 29129, # 3 Exhibit 2, NDIC Order 31104, # 4 Exhibit 3, NDIC Order 28475)(Carvell, Charles) (Entered: 05/02/2022) |
| 05/23/2022 | 107 | | MOTION for Partial Summary Judgment *Cross−Motion for Partial Summary Judgment* by United States of America. (Pettigrew, Shaun) Modified on 5/24/2022 to correct motion relief (mf) (Entered: 05/23/2022) |
| 05/23/2022 | 108 | | MEMORANDUM in Support re 107 MOTION for Partial Summary Judgment *Cross−Motion for Partial Summary Judgment* filed by United States of America. (Pettigrew, Shaun) Modified on 5/24/2022 to correct docket text for motion relief (mf) (Entered: 05/23/2022) |
| 05/23/2022 | 109 | | RESPONSE to Motion re 105 MOTION for Partial Summary Judgment filed by United States of America. See document 108 . (mf) (Entered: 05/24/2022) |
| 05/24/2022 | | | DOCKET CORRECTION re: 107 Motion for Summary Judgment. Clerk's Office corrected motion relief from Motion for Summary Judgment to Motion for Partial Summary Summary Judgment. Re: 108 Memorandum in Support. Multiple relief document filed as one relief. Clerk's Office filed Response at 109 . (mf) (Entered: 05/24/2022) |
| 06/13/2022 | 110 | | RESPONSE to Motion re 107 MOTION for Partial Summary Judgment *Cross−Motion for Partial Summary Judgment by United States of America* filed by North Dakota Board of University and School Lands. (Carvell, Charles) Modified on 6/14/2022 to correct link. (sj). (Entered: 06/13/2022) |
| 06/13/2022 | 111 | | REPLY to Response to Motion re 105 MOTION for Partial Summary Judgment filed by North Dakota Board of University and School Lands. (Carvell, Charles). Modified on 6/28/2022 to correct link and NEF Regenerated. (sj). (Entered: 06/13/2022) |
| 06/13/2022 | 113 | | *RESTRICTED − WRONG EVENT SELECTED* RESPONSE to Motion re 107 MOTION for Partial Summary Judgment filed by North Dakota Board of University and School Lands. (sj) Modified on 6/28/2022 to restrict access. (sj). (Entered: 06/28/2022) |
| 06/14/2022 | | | DOCKET CORRECTION re: 110 RESPONSE to Motion and 111 REPLY to Response to Motion. Clerk's Office corrected links. Note: Doc. Nos. 110 and 111 are duplicative; re: 113 RESPONSE to Motion. Clerk's Office restricted access. Wrong event used. (sj). NEF Regenerated on 6/28/2022. (sj). (Entered: 06/14/2022) |
| 06/27/2022 | 112 | | REPLY to Response to Motion re 107 MOTION for Partial Summary Judgment filed by United States of America. (Pettigrew, Shaun) (Entered: 06/27/2022) |
| 03/21/2023 | 114 | | |

| | | | ORDER by Judge Daniel L. Hovland granting <u>105</u> Motion for Partial Summary Judgment; denying <u>107</u> Motion for Partial Summary Judgment (MM) (Entered: 03/21/2023) |
|---|---|---|---|
| 03/21/2023 | <u>115</u> | | CLERK'S JUDGMENT(mf) (Entered: 03/21/2023) |
| 05/22/2023 | <u>116</u> | | NOTICE OF APPEAL as to <u>115</u> Clerk's Judgment by United States of America. (Filing Fee Waived) (Pettigrew, Shaun) Modified on 5/22/2023 to add filing fee waived language. (jb) (Entered: 05/22/2023) |
| 05/22/2023 | <u>117</u> | | Transmittal of Notice of Appeal Supplement to 8th Circuit Court of Appeals re <u>116</u> Notice of Appeal (jb) (Entered: 05/22/2023) |

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NORTH DAKOTA

|  |  |  |
|---|---|---|
| | ) | |
| Continental Resources, Inc. | ) | |
| | ) | **ORDER DENYING THE UNITED** |
| Plaintiff, | ) | **STATES' MOTION TO DISMISS** |
| vs. | ) | **FOR LACK OF SUBJECT MATTER** |
| | ) | **JURISDICION** |
| North Dakota Board of University and | ) | |
| School Lands, and the United States of | ) | |
| America, | ) | Case No. 1:17-cv-014 |
| | ) | |
| Defendants. | ) | |

---

Before the Court is the United States' Motion to Dismiss for Lack of Subject Matter Jurisdiction filed on October 18, 2017.  See Doc. No. 31.  The North Dakota Board of University and School Lands ("North Dakota") filed a response on December 20, 2017.  See Doc. No. 38. Continental Resources, Inc. ("Continental") also filed a response on January 19, 2018.  See Doc. No. 40.  The United States filed a reply on March 16, 2018.  See Doc. No. 41.  North Dakota filed a surreply on April 16, 2018.  See Doc. No. 44.  For the following reasons, the United States' motion to dismiss is denied.

## I.      BACKGROUND

Continental is an oil and gas production company that leases minerals from North Dakota and the United States in various counties in North Dakota.  In late 2016, Continental brought an interpleader action against North Dakota and the United States in the District Court of McKenzie County, Northwest Judicial District, North Dakota.  Continental requested the state court order North Dakota and the United States to interplead their respective claims to royalties from the

production of minerals, which each claim they own.  The United States removed the action to this Court on January 11, 2017.

The dispute stems from confusion over the historic ordinary high-water mark ("OHWM") of the Missouri River.  At statehood, under the Doctrine of Equal Footing, North Dakota acquired title to the bed of Missouri River up to the OHWM.[1]  In the 1950's, parts of the Missouri River Valley were flooded after the United States Army Corps of Engineers built the Garrison Dam, which created present-day Lake Sakakawea.  Until relatively recently, the exact location of the submerged riverbed was a question of only historical significance.  Today, with the advent of modern oil and gas drilling technology, and Lake Sakakawea's location in the Bakken Oil Fields, the submerged riverbed's location has taken on new importance.  The federal government owns tracts adjacent to the historic riverbed channel; its interests extend down to the OHWM.  This interpleader action concerns royalties from Continental's production of oil and gas on tracts near the submerged riverbed, to which North Dakota and the United States assert competing claims of ownership due to uncertainty as to where the OHWM was located.  These tracts ("the Disputed Minerals") are described in an exhibit attached to Continental's amended complaint.  See Doc. No. 27-1.

According to Continental's amended complaint, both North Dakota and the United States have made competing demands for roughly $3 million dollars in royalty proceeds.  See Doc. No. 27, pp. 7-8.  Continental asserts both North Dakota and the United States have threatened to enforce their purported interests.  Continental claims it has paid its royalty obligations to the United States as they come due.  The royalty percentages on the state leases are allegedly higher than the federal leases.  Continental has placed any overages due under the state leases in escrow with the

---

[1] Under the Equal Footing Doctrine, upon statehood, states acquired title "to the beds of waters then navigable" within their borders.  See PPL Montana, LLC v. Montana, 132 S. Ct. 1215, 1228 (2012).

2

May 22 2023 p 16

Bank of North Dakota.  Continental does not claim title to any of the royalty proceeds.  It "brings this suit merely to avoid being subject to duplicate liability for royalty obligations for mineral production attributable to the Disputed Lands."  <u>See</u> Doc. No. 27, p. 8.

## II.   <u>LEGAL DISCUSSION</u>

The United States has moved to dismiss based on a lack of subject matter jurisdiction.  The United States claims it has not waived its sovereign immunity to this interpleader suit.  Congress has granted a limited waiver of sovereign immunity to interpleader actions concerning liens.  However, the United States argues this dispute concerns title to minerals, and thus the waiver does not apply.  North Dakota and Continental resist dismissal.  They point to automatic liens created by state law, and they assert these liens satisfy the requirements for the United States' limited waiver of sovereign immunity.

The Court concludes the United States has waived its sovereign immunity to this interpleader suit to the extent it holds a state law lien on unpaid royalty proceeds.  The Court declines to address arguments the United States has made regarding the merits of North Dakota's claim to the disputed royalties until North Dakota has actually asserted its claims.  The Court grants Continental interpleader relief and orders North Dakota and the United States to assert their claims, if any, to the disputed royalties.

### A.   <u>STANDARD OF REVIEW</u>

Parties may assert a lack of subject matter jurisdiction by motion under Fed. R. Civ. P. 12(b)(1).  This defense may be brought in two ways: by facial attack or by factual attack.  <u>Branson Label, Inc. v. City of Branson</u>, 793 F.3d 910, 914 (8th Cir. 2015).  A facial attack simply asserts

the plaintiff has not plead a basis for subject matter jurisdiction.  Id. at 914.  In a facial attack, the Court must afford the non-moving party the benefit of the Rule 12(b)(6) safeguards, and it may only consider the pleadings and "materials that are necessarily embraced by the pleadings and exhibits attached to the complaint."  Carlsen v. Gamestop, Inc., 833 F.3d 903, 906 (8th Cir. 2016) (quoting Cox v. Mortg. Elec. Registration Sys., Inc., 685 F.3d 663, 668 (8th Cir. 2012)).   On the other hand, a factual attack asserts the actual existence of subject matter jurisdiction is lacking "irrespective of the pleadings, and matters outside the pleadings, such as testimony and affidavits, are considered."  Id. at 914-915 (quoting Menchaca v. Chrysler Credit Corp., 613 F.2d 507, 511 (5th Cir. 1980)).  The United States' motion to dismiss does not lodge a factual attack.  Rather, the United States has made various legal arguments concerning whether it has waived sovereign immunity to this interpleader action.  Consequently, the Court will treat this motion as a facial attack and consider only the pleadings and materials embraced by the pleadings.

## B.   INTERPLEADER ACTIONS AND RELIEF

Interpleader is a procedural devise that "allows a stakeholder who is uncertain if and to whom he is liable for money or property held by him to join those who are or might assert claims against him."  7 Wright, Miller & Kane, Federal Practice and Procedure § 1702 (3d ed. 2001) (citing Kiker v. Walters, 482 N.W.2d 626, 628 (N.D. 1992)).  The money or property at issue in an interpleader action is commonly referred to as the stake.  Interpleader is designed to protect the stakeholder from double liability and the vexation of multiple lawsuits.  Dakota Livestock Co. v. Keim, 552 F.2d 1302, 1306 (8th Cir. 1977).  It is a remedy involving two steps.  First, the Court must determine whether the stakeholder is entitled to invoke interpleader, "including whether the court has jurisdiction over the suit, whether the stakeholder is actually threatened with double or

4

multiple liability, and whether any equitable concerns prevent the use of interpleader." United States v. Tech. Prod., Inc., 497 F.3d 637, 641 (6th Cir. 2007). During the first stage, "the primary question is whether interpleader should be allowed. Issues relating to the merits of the action should be deferred until the so-called 'second stage' of interpleader." Wright, Miller & Kane, supra, § 1704. If interpleader is not an available remedy, the court should dismiss the action. Id. at § 1714. If the court determines interpleader is proper, it may discharge the stakeholder and move to the second stage. Tech. Prod., at 641. During the second stage of an interpleader action, the respective rights of the claimants to the property at stake are determined using the normal litigation process, including pleadings, discovery, motions, and trial. Id. Federal district courts have original jurisdiction over interpleader actions pursuant to 28 U.S.C. § 1335. Brigham Oil and Gas, L.P. v. N.D. Bd. of Univ. and Sch. Lands, No. 4:11-cv-058, 2011 WL 5879469, at *1 (D.N.D. Nov. 23, 2011).

### C.   WHETHER INTERPLEADER RELIEF IS AVAILABLE

The United States argues the doctrine of sovereign immunity bars its inclusion in this interpleader action. "The basic rule of federal sovereign immunity is that the United States cannot be sued at all without the consent of Congress." Block v. North Dakota, 461 U.S. 273, 287 (1983). However, Congress has authorized a limited waiver of sovereign immunity for interpleader suits concerning property on which the United States has or claims a lien:

> [T]he United States may be named a party in any civil action or suit in any district court, or in any State court having jurisdiction of the subject matter . . . of interpleader or in the nature of interpleader with respect to, real or personal property on which the United States has or claims a mortgage or other lien.

28 U.S.C. § 2410(a)(5).

5

The United States argues this suit, although couched as a dispute concerning royalty proceeds, actually involves title to real property.  The United States asserts that it does not claim a lien on the underlying mineral interests in dispute, and thus Section 2410's waiver of sovereign immunity does not apply.  Continental acknowledges that deciding who is entitled to the disputed royalty proceeds will necessitate a determination of mineral ownership, but Continental insists the disputed stake in this case is royalty proceeds—not title to minerals.  Continental claims Section 2410's waiver applies because the United States has a lien on the disputed royalties under North Dakota law.  Continental points to N.D.C.C. § 35-37-02, which provides that anyone who has an interest in oil or gas at the time it is severed "has a continuing security interest in and a lien on the oil or gas severed, or the proceeds of sale if the oil or gas has been sold . . . until the purchase price has been paid to the interest owner."

> i.     **Whether N.D.C.C. § 35-37-02 creates an interest that qualifies as a "mortgage or other lien" for purpose of the 28 U.S.C. § 2410**

At the outset, the Court must determine whether a lien created by Section 35-37-02 qualifies as a "mortgage or other lien" under the federal interpleader immunity waiver.  The United States cites *Brigham Oil and Gas v. North Dakota Board of University and School Lands*, a case decided by this Court, in support of dismissal. 2011 WL 5879469.  In *Brigham*, an oil and gas company brought an action against several defendants, including the United States, to require the defendants to interplead their claims to revenue derived from oil production.  Id. at *1.  The United States filed a motion to dismiss, arguing Section 2410's waiver of sovereign immunity was inapplicable because its claim was based on title to the underlying minerals and not a lien.  Although the Court granted the United States' motion, the motion was not contested and it contained no discussion of N.D.C.C. § 35-37-02's oil and gas lien provision.  Thus, the issue of

6

whether a lien created by Section 35-37-02 qualifies as a "mortgage or other lien" under the federal interpleader immunity waiver was not before the Court. Because the Court did not decide the matter, *Brigham* is not controlling. The Court will decide the issue as a matter of first impression.

When interpreting a statute, the Court must look to its plain language and give words their common meaning. Hennepin Cty. v. Fed. Nat. Mortg. Ass'n, 742 F.3d 818, 821 (8th Cir. 2014). Section 2410 waives the United States' sovereign immunity to interpleader suits "with respect to . . . real or personal property on which the United States has or claims a mortgage or other lien." Section 35-37-02, N.D.C.C., provides that a mineral interest owner "has a continuing security interest in and a lien on the oil or gas severed, or the proceeds of sale if the oil or gas has been sold, to the extent of the interest owner's interest until the purchase price has been paid to the interest owner." Thus, based on a plain reading of both statutes, if the United States owns minerals in North Dakota, it has a continuing state-law lien on proceeds derived from those minerals until the lien is satisfied.

The United States asks the Court to ignore the state-law liens because determining ownership to the disputed royalties requires a determination of title to the underlying minerals. In its words, "the United States claims title to the lands and interests in land covered by the federal leases rather than the priority of an outstanding lien." See Doc. No. 32, p. 15. This is an unreasonable position. As the United States has acknowledged elsewhere in its briefing, "either the United States owns the land and holds the alleged state law lien or North Dakota owns the land and holds the alleged state law liens." See Doc. No. 32, p. 14. In any case, there is a lien on the unpaid royalties "to the extent of the interest owner's interest." Because the United States claims an interest in the Disputed Minerals, it cannot argue it does not have or claim a lien on unpaid royalties produced from those minerals. Section 2410's waiver applies.

7

ii.     **Whether 28 U.S.C. § 2410 requires a dispute as to the priority of the United States' lien or mortgage**

The United States also makes a technical argument for dismissal, insisting Section 2410's waiver does not apply unless the dispute concerns the priority of liens.  However, no such requirement is found in the statute's text, and other courts have applied Section 2410's waiver when the validity of a government lien, rather than its priority, has been challenged.  The United States seizes on dicta in *Hussain v. Boston Old Colony Insurance Co.* to support its argument. 311 F.3d 623 (5th Cir. 2002).  Discussing Section 2410 generally, the *Hussain* court noted "Section 2410(a) waives the sovereign immunity of the federal government, enabling private parties to hale the government into court *to determine the priority of outstanding liens* on real or personal property." Id. at 629 (emphasis added).

*Hussain* did not decide whether Section 2410 requires a priority determination.  *Hussain* concerned a lawsuit, which was removed from Louisiana state court, regarding the priority of liens on insurance proceeds.  Id. at 627-28.  The Fifth Circuit Court of Appeals was tasked with determining, *inter alia*, whether a state-court motion to determine the proper distribution of the insurance proceeds "constitutes an action in interpleader within the contemplation of § 2410(a)(5)" and whether a state-court order to show cause against the United States "satisfies the [Section 2410] statutory requirement that the government be 'named a party in any civil action.'"  Id. at 631.  Answering both questions in the affirmative, the Fifth Circuit Court of Appeals concluded Section 2410's waiver of sovereign immunity applied, despite the United States' "unique mode of entrance" via the state court motion and order.  Id. at 630.  The *Hussain* court did not discuss or decide whether Section 2410's waiver applies to disputes concerning the validity of a government lien, rather than simply the priority of a lien in relation to other liens.  To the extent the court's discussion may have implied such a limitation, the language is dicta.

8

Other jurisdictions have read Section 2410's waiver to permit challenges to the validity of government liens, despite there being no dispute as to priority.  For example, in *Aqua Bar & Lounge, Inc. v. United States*, the Internal Revenue Service seized the plaintiff's liquor license and sold it to a third party.  539 F.2d 935, 936-37 (3d Cir. 1976).  The plaintiff brought an interpleader action against the United States and the third-party purchaser in federal district court.  Id. at 937. The Plaintiff sought to challenge "only the validity of a tax lien and sale for failure to comply with statutory requirements."  Id. at 938.  The district court dismissed the suit.  Id.  The Third Circuit Court of Appeals reversed the district court's dismissal and held "that § 2410 constitutes a waiver of sovereign immunity to a suit brought by a taxpayer against the United States which challenges the validity of a federal tax lien and sale . . . ."  Id. at 940-41.  There was no issue of lien priority in *Aqua Bar*, yet the Court held Section 2410's waiver provision applied.

This Court concludes Section 2410 does not restrict the United States' waiver of sovereign immunity to only those cases that concern the priority of liens—such a limitation is contained nowhere in the statute's text.  To the contrary, Section 2410 provides a straight-forward waiver of sovereign immunity when an interpleader action concerns "real or personal property on which the United States has or claims a mortgage or other lien."  28 U.S.C. § 2410(a)(5); see also United States v. Brosnan, 363 U.S. 237, 245 (1960) (United States may be made party to a suit under Section 2410 in a suit relating to property "on which the United States claims any kind of mortgage or lien"); United States v. Sentinel Fire Ins. Co., 178 F.2d 217, 223 (5th Cir. 1949) (exercising jurisdiction over the United States under Section 2410 when "an adjudication touching a lien the United States claimed on the personal property involved was sought").  Because the United States claims an interest in the minerals from which the royalties are derived, and North Dakota law provides mineral interest owners with a lien on the proceeds from oil and gas production, the Court

Appellate Case: 23-2249    Page: 23    Date Filed: 05/22/2023 Entry ID: 5276322 May 22 2023 p 23

concludes Section 2410's requirements have been met.  The United States has waived its sovereign immunity, and this interpleader action may proceed.

**D.**   **WHETHER A DECISION ON THE MERITS IS PROPER AT THIS JUNCTURE**

Having determined Section 2410's waiver applies, the Court turns to the United States' argument that the Court lacks subject matter jurisdiction to determine ownership of the disputed royalties.  The United States argues that even if it has waived its sovereign immunity under Section 2410, "this action should be dismissed because Continental improperly seeks to invoke the remedy of interpleader to force the United States to interplead claims to which it has not waived its sovereign immunity"—namely claims to the underlying minerals, which the United States asserts must be brought under the Quiet Title Act ("QTA"), 28 U.S.C. § 2409a.  The Court declines to rule on the merits of any claims before they have been made.

Under the QTA, the United States has waived its sovereign immunity to civil actions "to adjudicate a disputed title to real property in which the United States claims an interest." 28 U.S.C. § 2409a(a).  "Thus, for a court to have jurisdiction over a QTA claim, the plaintiff must establish that: (1) the United States 'claims an interest' in the property at issue; and (2) title to the property is 'disputed.'"  Kane Cty., Utah v. United States, 772 F.3d 1205, 1210-11 (10th Cir. 2014).  The QTA contains a 12-year statute of limitation for claims brought by a state concerning lands on which the United States has made "substantial improvements," "substantial investments," or conducted "substantial activities pursuant to a management plan."  28 U.S.C. § 2409(a)(i). However, if the suit concerns "tide or submerged lands," the 12-year limitation period does not apply.  Id.

10

The United States first argues there is no dispute, and thus no jurisdiction under the QTA, because North Dakota has enacted legislation that adopts federal surveys as conclusive in delineating the ordinary high-water mark on lands owned by the federal government.  See N.D.C.C. § 61-33.1-06 (the OHWM adjacent to "lands owned by the United States must be determined . . . in accordance with federal law.").  North Dakota vehemently disputes the United States interpretation of its legislation, and North Dakota claims discovery is needed to determine whether the United States' OHWM determination is, in fact, made "in accordance with federal law."  North Dakota also argues that, if the legislation is construed as ceding land to the federal government, as the United States urges, such a construction would be in violation of the public trust doctrine[2] and North Dakota's constitution.[3]  North Dakota also contests the United States' assertions that the QTA limitation period has expired.  North Dakota claims the land at issue is "submerged land," and thus its claims are excepted from the limitation period.  To the extent the land is not submerged land, North Dakota claims discovery is needed to determine whether the limitations period has expired.

The United States relies on *Hat Ranch, Inc. v. Babbitt* to argue that an interpleader action must be dismissed when a court lacks jurisdiction over the underlying dispute.  932 F. Supp. 1 (D.C. 1995).  In *Hat Ranch*, ranchers who held grazing permits were subject to competing demands for grazing fees by the United States and a county in New Mexico.  The ranchers deposited the disputed fees with the court and brought an interpleader action.  Id. at 2.  The county filed a cross-complaint against the United States, and the United States moved to dismiss arguing the court

---

[2]North Dakota owns lands beneath navigable waters "in trust for the public" and it can "no more abdicate its trust over property in which the whole people are interested in, like navigable waters and soils under them . . . than it can abdicate its police powers in the administration of government and the preservation of the peace."  United Plainsmen Ass'n v. N.D. State Water Conservation Comm'n, 247 N.W.2d 457, 460 (N.D. 1976).
[3]According to North Dakota, N.D.C.C. § 61-33.1-06 "gives the federal government special treatment and is an unconstitutional 'special law' and an unconstitutional grant of 'special privileges'" in violation of N.D. Const. art. I, § 21 and art. IV, § 13.  See Doc. No. 38, pp. 28-31.

Appellate Case: 23-2249   Page: 25   Date Filed: 05/22/2023 Entry ID: 5276322 May 22 2023 p 25

lacked jurisdiction over the cross-complaint.  Id.  The court concluded the dispute required the county to bring its claim under the QTA, and because the QTA's statute of limitations had expired, the court lacked jurisdiction over the cross-complaint.  Id. at 3.  Because it lacked jurisdiction over the cross-complaint, the court concluded it could not grant the ranchers interpleader relief, it returned the disputed fees to the ranchers, and it dismissed the interpleader suit under Rule 12(b)(6) of the Federal Rules of Civil Procedure.  Id.

The Court agrees that *Hat Ranch* has similarities to the case at hand.  However, there is one obvious distinction—*Hat Ranch* was decided during the second stage of interpleader, after a claim to the disputed res had been made, and upon summary judgment.  The United States' reliance on *Hat Ranch* is premature, as is its request that this Court adjudicate the parties' claims to the stake before they have been made.  See Wright, Miller & Kane, supra, § 1704 ("Issues relating to the merits of the action should be deferred until the so-called "second stage" of interpleader."); Bierman v. Marcus, 246 F.2d 200, 202 (3d Cir. 1957) ("jurisdiction in interpleader is not dependent upon the merits of the claims of the parties interpleaded"); William Penn Life Ins. Co. of New York v. Viscuso, 569 F. Supp. 2d 355, 359 (S.D.N.Y. 2008) ("The availability of interpleader does not depend on the merits of the potential claims against the stakeholder."); Aaron v. Merrill Lynch Pierce, Fenner & Smith, 502 F. Supp. 2d 804, 809 (N.D. Ind. 2007) ("a court isn't required to assess the merits of the competing claims in determining whether interpleader is appropriate").  The Court has determined this interpleader action is appropriate.  It will not adjudicate the parties' claims to the stake until those claims have been made.

12

E.     __THE DISPUTED STAKE__

The parties disagree as to what the disputed stake is and what relief, if any, is available. In Continental's amended complaint, it requests the Court (1) to relieve Continental from making royalty payments from production on the Disputed Minerals to both North Dakota and the United States; (2) to allow Continental to deposit royalties on production of the Disputed Minerals with the Court or some other depository; (3) to require North Dakota and the United States to assert their claims to the royalty proceeds; (4) to decide who is entitled to the proceeds; and (5) to restrain North Dakota and the United States from bringing suit against Continental to recover royalties on production of the Disputed Minerals. See Doc. No. 27, p. 9.

Under 28 U.S.C. § 2410, the United States has waived its sovereign immunity to suit only so far as the United States has a lien on the property in dispute. Under North Dakota law, the United States' lien on royalties produced from the disputed minerals exists "until the purchase price has been paid." N.D.C.C. § 35-37-02. Continental has paid, and it continues to pay, its royalty obligations under its lease agreements with the United States. See Doc. No. 27, p. 8. Thus, the United States does not have a lien on the royalty proceeds it has received, and consequently Section 2410's waiver of sovereign immunity does not apply to those proceeds. See 28 U.S.C. § 2410 ("the United States may be named a party in any civil action . . . of interpleader . . . with respect to . . . real or personal property on which the United States claims a mortgage or other lien."); see also Koehler v. United States, 153 F.3d 263, 265 (5th Cir. 1998) ("no suit may be brought against the United States unless the suit is brought in exact compliance with the terms of a statute under which the sovereign has consented to be sued"); Estate of Johnson, 836 F.2d 940, 943 (5th Cir. 1988) (Section 2410 must be "narrowly read").

13

May 22 2023 p 27

### F.    INTERPLEADER RELIEF

Given Section 2410's limited waiver of sovereign immunity, this Court's jurisdiction extends only to the severed minerals, or proceeds from production of the severed minerals, over which the United States maintains a lien—i.e. royalty payments the United States claims to own but has not received.  In other words, the disputed stake in this interpleader action is "the oil or gas severed" from the Disputed Minerals, or unpaid "proceeds of sale if [such] oil or gas has been sold."  See N.D.C.C. § 35-37-02.  However, the Court must consider the practical realities of the case.  It would be impossible for Continental to deposit severed minerals with the Court, and it would be unworkable for Continental to make recurring and continuous royalty deposits into the Court's registry.  Thus, the Court fashions the following relief:

(1) Continental shall hold the disputed stake, as it has been defined above, in escrow;

(2) North Dakota and the United States are barred from instituting legal action against Continental to recover the disputed stake until their respective rights have been determined and this action has been resolved;

(3) North Dakota and the United States shall assert their claims, if any, to the disputed stake; and

(4) North Dakota and the United States shall confer and submit a proposed scheduling order to the Court no later than sixty (60) days from the date of this order.

## III.   CONCLUSION

The Court has carefully reviewed the entire record, the parties' filings, and the relevant law.  For the reasons set forth above, the United States motion to dismiss (Doc. No. 31) is **DENIED**.

**IT IS SO ORDERED**

Dated this 31st day of December, 2018.

/s/  Daniel L. Hovland
Daniel L. Hovland, Chief Judge
United States District Court

14

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NORTH DAKOTA**

Continental Resources, Inc.              )
an Oklahoma corporation,                 )
                                         )
      Plaintiff,            )         **ORDER GRANTING THE UNITED**
                                         )         **STATES' MOTION FOR PARTIAL**
      vs.                   )         **SUMMARY JUDGMENT**
                                         )
North Dakota Board of University         )
and School Lands and the United          )
States of America,                       )         Case No. 1:17-cv-014
                                         )
      Defendants,           )
_____

     Before the Court are motions for partial summary judgment filed by both defendants on

May 7, 2020.  See Doc. Nos. 81 and 83.  The motions have been fully briefed and are ripe for

consideration.  See Doc. Nos. 82, 84, 85, 87, 88, and 89.  For the reasons set forth below, the

United States' motion for partial summary judgment is granted and the Land Board's motion for

partial summary judgment is denied.

I.     **BACKGROUND**

     This dispute stems from competing claims of mineral ownership due to disagreement as

to where the historic ordinary high-water mark ("OHWM") of the Missouri River is located.  In

late 2016, Continental Resources Inc. ("Continental Resources") brought this interpleader action

against the North Dakota Board of University and School Lands ("Land Board") and the United

States in the District Court of McKenzie County, Northwest Judicial District, North Dakota.

Continental Resources is an oil and gas production company that leases minerals in western

North Dakota from both North Dakota and the United States.  The Land Board consists of the

1

North Dakota Governor, Secretary of State, Superintendent of Public Instruction, Treasurer, and Attorney General. It is charged with, among other things, managing North Dakota's minerals underlying sovereign lands. Continental Resources requested the state court order North Dakota and the United States to interplead their respective claims to royalties from the production of minerals on lands which each claim to own and have issued leases with overlapping acreage. The disputed minerals are described in an exhibit attached to Continental Resources' amended complaint. See Doc. No. 27-1. The United States removed the action to this Court on January 11, 2017. More than three (3) million dollars in royalties are at stake and the royalties continue to accrue. Continental Resources does not claim an interest in any of the royalties. It brings this interpleader action simply to avoid being subject to duplicate liability for royalty obligations attributable to the disputed lands. Continental Resources is holding the disputed royalties in escrow at the direction of the Court, pending a final determination on the merits.

The Missouri River in North Dakota is a navigable river. In 1889, North Dakota was admitted to the Union and acquired title, pursuant to the equal footing doctrine, to the bed of the Missouri River, including the underlying minerals, up to the OHWM. To document the location of the Missouri River's OHWM, and thus delineate the boundary between state-owned riverbed and federally-owned uplands, the General Land Office (predecessor to the Bureau of Land Management "BLM") prepared and filed cadastral surveys between 1891 and 1901, using the Manual of Surveying Instructions in effect at the time. The meander line identified in these surveys marked the OHWM at the time.

Rivers, especially large navigable rivers, such as the Missouri, are dynamic. They change course through erosion, accretion, and avulsion, and when they do, the OHWM changes

Appellate Case: 23-2249   Page: 30   Date Filed: 05/22/2023 Entry ID: 5276322   May 22 2023 p 30

as well.  Rivers also flood.  Missouri River flooding was particularly bad in the first half of the twentieth century.  So it was that Congress passed the Flood Control Act of 1944, which authorized the United States Army Corps of Engineers ("Corps") to construct the Garrison Dam on the main stem of the Missouri River in North Dakota as part of the Pick-Sloan Missouri basin project dams.  Several other dams along the Missouri River were constructed as well.  The waters impounded by the Garrison Dam created Lake Sakakawea, one of the largest reservoirs in the United States.  Garrison Dam was completed in 1953.  Once the dam was completed and Lake Sakakawea began to form, the portion of the Missouri River underlying Lake Sakakawea ceased its wanderings and the OHWM became fixed.  This fixed, but hotly contested, OHWM is known as the historic OHWM.

By the time construction of Garrison Dam got underway, many of the uplands that would be inundated by Lake Sakakawea had been patented and passed from the federal public domain to private landowners.  Before the dam was constructed, the Corps surveyed the privately-owned land which was expected to be inundated and would need to be acquired by the United States.  The resulting survey maps are known as the "Corps Segment Maps."  The Corps Segment Maps depict the riverbed and OHWM as it existed in 1952.  Where the Corps was able to acquire the privately-owned lands that it needed through a voluntary sale, it allowed the landowners to reserve the underlying minerals.  Where the Corps was forced to rely on the power of eminent domain, however, it acquired both the surface estate and the associated mineral estate.  These lands which were acquired by the United States from private parties are referred to as "acquired lands."

Not all the land inundated by Lake Sakakawea was owned by private parties.  Some of the land was owned by the United States.  At the time, the United States still held title to public domain uplands above the historic OHWM of the Missouri River that had never left the possession of the United States since they were acquired from France in 1803.  These lands, which have never been patented or left federal ownership, are referred to as "retained public domain lands."  As a result, the surface estate of the former uplands now submerged by Lake Sakakawea is owned by the United States and consists of a mix of "retained public domain lands" and "acquired lands."  The mineral estate in those former uplands consists of a mix of retained public domain mineral interests and acquired mineral interests which belong to the United States and mineral interests that remain in private ownership.

Prior to the Bakken oil boom which began around 2005, the exact location of the submerged riverbed was a question of only historical significance.  However, with the advent of modern oil and gas drilling technology, and Lake Sakakawea's location in the Bakken oil fields, the submerged riverbed's historic OHWM has taken on new importance.  The United States owns now submerged lands upland of the historic OHWM of the Missouri River.  Its interests extend down to the historic OHWM.  Pursuant to the eqaul footing doctrine, North Dakota owns the riverbed, including the mineral estate, up to the historic OHWM.  With the United States and North Dakota at odds over the location of the historic OHWM, more surveys were conducted.

In 2010, the Land Board hired a private engineering firm, Bartlett & West, to conduct a survey of the Missouri River.  The final report was completed in 2011.[1]  Bartlett & West conducted its analysis in compliance with Ordinary High Water Mark Delineation Guidelines

---

[1]The Bartlett & West report is available at:
https://www.land.nd.gov/sites/www/files/documents/Minerals/OHWM2/ohwm%20report.pdf.

Appellate Case: 23-2249    Page: 32    Date Filed: 05/22/2023 Entry ID: 5276222

issued by the North Dakota State Engineer in 2007.  The study did not utilize the Corps Segment Maps.  Since completion of the Bartlett & West study, the Land Board has leased North Dakota's mineral interests underlying the bed of the Missouri River consistent with the study's determination of the historic OHWM.  Prior to the Bartlett & West study, North Dakota's minerals were leased based upon aerial photographs and ground surveys.

In 2013, the BLM prepared Supplemental Plats of the retained public domain lands in the vicinity of Lake Sakakawea to account for the movement of the Missouri River between the original cadastral surveys conducted in the late nineteenth and early twentieth centuries and the impoundment of Lake Sakakawea in the 1950s.  The Supplemental Plats do not show the boundary between state-owned riverbed and any other riparian property, whether privately held or federally acquired.  The BLM determined the Corps Segment Maps were the most comprehensive evidence of the Missouri River's location just prior to impoundment.  The Supplemental Plats were created by overlaying the Corps Segment Maps on the original turn of the century surveys.  The Supplemental Plats show the official position of the United States as to the historic OHWM of the Missouri River prior to the formation of Lake Sakakawea.  The Supplemental Plats show the boundary between the now submerged federal public domain uplands and State riverbed along portions of the Missouri River in North Dakota.  The BLM published the Supplemental Plats in late 2013 and early 2014.  North Dakota protested the Supplemental Plats because the BLM applied federal law rather than state law in making its OHWM determination.  The State contended the application of federal law led to an inaccurate OHWM boundary in the Supplemental Plats which resulted in some lands being shown as federally-owned uplands above the OHWM rather than state-owned riverbed below the OHWM.

5

The BLM rejected the protest.  North Dakota appealed.  The Interior Board of Land Appeals rejected North Dakota's appeal, finding "[f]ederal law applies to BLM's determination of the OHWM along retained Federal riparian property, and state law should not be borrowed."  195 IBLA 194, 216 (March 25, 2020).  This determination meant the boundary between state and federal lands would be determined as shown in the Supplemental Plats.

In April 2017, following the filing of this action and while the IBLA proceeding was pending, North Dakota enacted Chapter 61-33.1 of the North Dakota Century Code to address state ownership of the bed of the Missouri River.  In litigation with private mineral owners regarding lands whose surface estate had previously been sold to the United States to construct the Garrison Dam, the Land Board claimed "title to the bed of the Missouri River up to the current ordinary high water mark."  See Wilkinson v. Bd. of Univ. & School Lands, 903 N.W.2d 51, 54 (N.D. 2017) ("Wilkinson I") (emphasis added).  Chapter 61-33.1 rejected this view and made clear that "state sovereign land mineral ownership of the riverbed segments subject to inundation by Pick-Sloan Missouri basin project dams extends only to the historical Missouri riverbed channel up to the ordinary high water mark."  N.D.C.C. § 61-33.1-02 (emphasis added); see also N.D.C.C. § 61-33.1-01 (defining "[h]istorical Missouri riverbed channel" as the riverbed as it existed when the Pick-Sloan Plan dams were closed to begin impounding the Missouri River).

Section 61-33.1-03(1) provided that, for lands other than non-patented public domain lands, BLM's Supplemental Plats "must be considered the presumptive determination of the ordinary high water mark of the historical Missouri riverbed channel," subject to a review process set forth in the statute.  N.D.C.C. § 61-33.1-03(1); see also N.D.C.C. § 61.33.1-01

6

("'Corps survey' means the last known survey conducted by the army corps of engineers in connection with the corps' determination of the amount of land acquired by the corps for the impoundment of Lake Sakakawea and Lake Oahe, as supplemented by the supplemental plats created by the branch of cadastral survey of the United States bureau of land management"). For "nonpatented public domain lands" owned by the United States, on the other hand, the OHWM of the historic Missouri River on these lands "must be determined by the branch of cadastral study of the United States bureau of land management in accordance with federal law." N.D.C.C. § 61-33.1-06. Chapter 61-33.1 is retroactive to the date of the closure of the Pick-Sloan dams save for the OHWM determination which is retroactive to all oil and gas wells spud after January 1, 2006, for purposes of oil and gas mineral and royalty ownership. 2017 N.D. Sess. Laws Ch. 426, § 4. The Legislature appropriated $100 million for refunds and authorized an $87 million line of credit with the Bank of North Dakota if the initial appropriation was insufficient. 2017 N.D. Sess. Laws Ch. 426, § 3.

In Chapter 61-33.1, the North Dakota Legislature commissioned an additional study. <u>See</u> N.D.C.C. § 61-33.1-03. The report was completed by Wenck Associates, Inc. in 2018.[2] The Wenck Report determination of the OHWM was made in accordance with the parameters set forth in the enabling legislation. <u>See</u> N.D.C.C. § 61-33.1-03(3). The Bartlett & West Report OHWM determination is favorable to North Dakota, while the OHWM determination in the Supplemental Plats favor the United States. The Wenck Report occupies the middle ground between the Bartlett & West Report and the Supplemental Plats in its determination of the OHWM. Thus, it would seem determination of the OHWM is more art than science.

---

[2]The Wenck Report is available at:
https://www.dmr.nd.gov/OrdinaryHighWaterMark/docs/2018-10-03_Amended_Final_OHWM_Report.pdf

Chapter 61-33.1 proved controversial.  In January of 2018, a group of taxpayers challenged the law, contending it was unconstitutional.  The plaintiffs' complaint alleged that Chapter 61-33.1 "unconstitutionally gives away State-owned mineral interests to 108,000 acres underneath the OHWM of the Missouri River/Lake Sakakawea, and above the Historic OHWM and gives away over $205 million in payments, in violation of the Constitution of the State of North Dakota."  Sorum v. State, 947 N.W.2d 382, 388 (N.D. 2020).  On July 30, 2020, the North Dakota Supreme Court issued an opinion finding Chapter 61-33.1 did not violate the North Dakota constitution's gift clause, watercourses clause, privileges or immunities clause, the local and special laws prohibition, and the public trust doctrine.  Id. at 390-400 (noting the State recognized in Chapter 61-33.1 that it had an obligation to pay its debts and deal fairly with its citizens).  On August 27, 2020, the North Dakota Supreme Court in Wilkinson v. Bd. of Univ. & School Lands, 947 N.W.2d 910, 920-21 (N.D. 2020) ("Wilkinson II") found Chapter 61-33.1 was not ambiguous and applied to the land in question which was above the OHWM of the historical Missouri riverbed channel and was not state sovereign lands.  The case was remanded to the state district court for a determination of damages on the royalties the state had unfairly claimed.  Id. at 920.  Sorum and Wilkinson II were decided after the briefing on the current motions was completed.


II.     **STANDARD OF REVIEW**

Summary judgment is appropriate when the evidence, viewed in a light most favorable to the non-moving party, indicates that no genuine issues of material fact exist and that the moving party is entitled to judgment as a matter of law.  Davison v. City of Minneapolis, 490 F.3d 648,

Appellate Case: 23-2249     Page: 36     Date Filed: 05/22/2023 Entry ID: 5276322   May 22 2023 p 36

654 (8th Cir. 2007); see Fed. R. Civ. P. 56(a).  Summary judgment is not appropriate if there are factual disputes that may affect the outcome of the case under the applicable substantive law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  An issue of material fact is genuine if the evidence would allow a reasonable jury to return a verdict for the non-moving party.  Id. The purpose of summary judgment is to assess the evidence and determine if a trial is genuinely necessary.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

The Court must inquire whether the evidence presents a sufficient disagreement to require the submission of the case to a jury or whether the evidence is so one-sided that one party must prevail as a matter of law.  Diesel Mach., Inc. v. B.R. Lee Indus., Inc., 418 F.3d 820, 832 (8th Cir. 2005).  The moving party bears the responsibility of informing the court of the basis for the motion and identifying the portions of the record which demonstrate the absence of a genuine issue of material fact.  Torgerson v. City of Rochester, 643 F.3d 1031, 1042 (8th Cir. 2011).  The non-moving party may not rely merely on allegations or denials in its own pleading; rather, its response must set out specific facts showing a genuine issue for trial.  Id.; Fed. R. Civ. P. 56(c)(1).  If the record taken as a whole and viewed in a light most favorable to the non-moving party could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial and summary judgment is appropriate.  Matsushita, 475 U.S. at 587.

## III.  **LEGAL DISCUSSION**

The pending motions for partial summary judgment present two closely related issues as to the disputed nonpatented public domain lands: (1) the first issue is whether state or federal law governs the determination of the historical OHWM; (2) the second issue is the application of

9

N.D.C.C. § 61-33.1-06 to the disputed lands.   Acquired lands are not at issue in the current motions.   The Court will address each question in turn.

### A.    CHOICE OF LAW

The United States contends federal law must be applied in order to determine the OHWM of the historic Missouri River abutting public domain lands.   Applying federal law will result in the adoption of the historic OHWM as determined by the Supplemental Plats.   The Land Board agrees federal law governs the determination, but contends federal law borrows state law as the rule of decision.

Under the equal footing doctrine, upon statehood, States acquire absolute title "to the beds of waters then navigable" within their borders.   See PPL Montana, LLC v. Montana, 565 U.S. 576, 591 (2012).   Such was the rule for the thirteen original States and all subsequent States as coequals under the Constitution.   Id.   All States hold "absolute right to all their navigable waters and the soils under them."   Id. at 590.   State title to these lands is "conferred not by Congress but by the Constitution itself."   Id. at 591.   Since title is conferred to the States by the Constitution itself, no Congressional land grant to a third party can defeat State title.   Oregon ex rel. State Land Board v. Corvallis Sand & Gravel Co., 429 U.S. 363, 374 (1977).   The initial boundary between the riverbed and the uplands is determined by federal law.   Id. at 370-71.   "[T]hereafter the role of the equal-footing doctrine is ended, and the land is subject to the laws of the State" "unless there were present some other principle of federal law requiring state law to be displaced."   Id. at 376, 371.   This general rule from *Corvallis* does not apply where the "United States has never yielded title or terminated its interest."   Wilson v. Omaha Indian Tribe, 442 U.S.

Appellate Case: 23-2249     Page: 38     Date Filed: 05/22/2023 Entry ID: 5276622 p 38

653, 670 (1979).  Thus, federal law must be applied in this case as the land in question has never been patented.

However, "[c]ontroversies governed by federal law do not inevitably require resort to uniform federal rules.  It may be determined as a matter of choice of law that, although federal law should govern a given question, state law should be borrowed and applied as the federal rule for deciding the substantive legal dispute at hand."  California ex rel. State Lands Comm'n v. United States, 457 U.S. 273, 283 (1982) (citations omitted).  "Whether to adopt state law or to fashion a nationwide federal rule is a matter of judicial policy 'dependent upon a variety of considerations always relevant to the nature of the specific governmental interests and to the effects upon them of applying state law.'"  Wilson, 442 U.S. at 672 (quoting United States v. Kimbell Foods, Inc., 440 U.S. 715, 727-28 (1979)).

The United States contends *PPL Montana* rather than *Wilson* should control the Court's analysis.  The Court finds the contention unpersuasive.  The United States cites *PPL Montana* for the proposition that a State may not adopt a retroactive rule for determining navigability and then attempt to extend the rule to OHWM determinations.  *PPL Montana* involved a question of whether certain sections of the Missouri River were navigable and thus were acquired by Montana under the equal footing doctrine when it joined the Union in 1889.  565 U.S. at 590-91.  This question was answered by applying the "navigability in fact" rule.  Id. at 591.  Navigability is determined as of the time of statehood.  Id. at 592.  *PPL Montana* was decided in 2012.  It does not address boundary issues or how the OHWM is determined.  *PPL Montana* makes no mention of *Wilson*, or *California ex rel. State Lands Comm'n* which were decided well before *PPL Montana*.  While both navigability and the OHWM are aspects of the equal footing

11

doctrine, the two determinations are made by applying completely divergent tests and law. The Court is unwilling to ignore *Wilson*. *PPL Montana* has little to offer in assessing the question presented in this case as to what law should be applied to new OHWM boundaries created well after statehood by a meandering Missouri River.

In *Wilson*, the United States and the Omaha Indian tribe sued to quiet title to reservation lands which had been affected by the movement of the Missouri River where it bordered Iowa and Nebraska. 422 U.S. at 658-59. The critical question was whether federal or state law should be applied to determine whether changes in the course of the Missouri River were accretive or avulsive. Id. at 658. The Supreme Court held federal law must apply because the land in question had never been patented by the United States. Id. at 670-71. If the land hand been granted to private owners state law would apply. Id. However, this determination did not end the Court's inquiry because federal law sometimes borrows state law as the rule of decision. Id. at 672. Factors to consider include "whether there is need for a nationally uniform body of law to apply in situations comparable to this, whether application of state law would frustrate federal policy or functions, and the impact a federal rule might have on existing relationships under state law." Id. at 672-73. Applying these factors, the Supreme Court in *Wilson* determined state law should be borrowed as the rule of decision. The Supreme Court explained that state law should be borrowed because a uniform federal rule was not required, federal court jurisdiction over such questions insured fair treatment of federal interests, and applying federal law would interfere with the substantial interests States have in applying their own law to resolve land disputes. Id. at 673-75.

Appellate Case: 23-2249   Page: 40   Date Filed: 05/22/2023 Entry ID: 5276622 May 22 2023 p 40

In *California ex rel. State Lands Comm'n,* the Supreme Court faced another choice of law riparian boundary dispute.  457 U.S. 273.  The case involved a suit by California to quiet title in oceanfront land created by accretion to land owned by the United States.  Id. at 275.  The central issue was whether state or federal law governed the determination.  Id.  The construction of two jetties and resulting accretion had caused one hundred eighty-four acres of upland to be created by the seaward movement of the OHWM of the Pacific Ocean.  Id. at 275-76.  Citing *Wilson*, the Supreme Court found federal law applied because the case involved land "where title rests with or was derived from" the United States.  Id. at 283.  The Supreme Court went on to hold that the case was not one where state law should be borrowed as the rule of decision because a federal statute controlled the determination.  Id. at 283.  The Supreme Court explained that a provision of the federal Submerged Lands Act withholding accretions to coastal lands from grants to the States meant "borrowing for federal-law purposes a state rule that would divest federal ownership is foreclosed."  Id. at 283-84.  *Wilson* was distinguished because that case involved "no special federal concerns, let alone a statutory directive," which required a federal common-law rule.  Id. at 284.

It is undisputed federal law governs this dispute.  However, this finding does not end the Court's inquiry because as noted in *Wilson*, federal law sometimes borrows state law as the rule of decision.  The Court concludes *Wilson* and the application of the three factors discussed therein, must then guide the Court's analysis of whether state law should be borrowed as the rule of decision in this case.  See 195 IBLA 194, 210 (March 25, 2020) (applying *Wilson*).

Navigable rivers change course and when they do so the OHWM moves as well.  The question is what law applies to determine the new OHWM.  The present case and *Wilson* are

Appellate Case: 23-2249   Page: 41   Date Filed: 05/22/2023 Entry ID: 5276622   May 22 2023 p 41

very similar.  Both cases involve land which never left federal ownership and was affected by the movement of the Missouri River.  The lands in *Wilson* were held in trust for an Indian tribe but otherwise *Wilson* and the present case are remarkably similar.  Neither case involves an interstate boundary.

In *Wilson,* the Supreme Court analyzed the three relevant factors as follows:

First, we perceive no need for a uniform national rule to determine whether changes in the course of a river affecting riparian land owned or possessed by the United States or by an Indian tribe have been avulsive or accretive.  For this purpose, we see little reason why federal interests should not be treated under the same rules of property that apply to private persons holding property in the same area by virtue of state, rather than federal, law.  It is true that States may differ among themselves with respect to the rules that will identify and distinguish between avulsions and accretions, but as long as the applicable standard is applied, evenhandedly to particular disputes, we discern no imperative need to develop a general body of federal common law to decide cases such as this, where an interstate boundary is not in dispute.  We should not accept generalized pleas for uniformity as substitutes for concrete evidence that adopting state law would adversely affect federal interests.

Furthermore, given equitable application of state law, there is little likelihood of injury to federal trust responsibilities or to tribal possessory interests.  On some occasions, Indian tribes may lose some land because of the application of a particular state rule of accretion and avulsion, but it is as likely on other occasions that the tribe will stand to gain.  The same would be the case under a federal rule, including the rule that the Court of Appeals announced in this case.  The United States fears a hostile and unfavorable treatment at the hands of state law, but, as we have said, the legal issues are federal and the federal courts will have jurisdiction to hear them.  Adequate means are thus available to insure fair treatment of tribal and federal interests.

This is also an area in which the States have substantial interest in having their own law resolve controversies such as these.  Private landowners rely on state real property law when purchasing real property, whether riparian land or not.  There is considerable merit in not having the reasonable expectations of these private landowners upset by the vagaries of being located adjacent to or across from Indian reservations or other property in which the United States has a substantial interest.  Borrowing state law will also avoid arriving at one answer to the avulsive-accretion riddle in disputes involving Indians on one side and possibly quite different answers with respect to neighboring land where non-Indians are

14

the disputants.  Indeed, in this case several hundred acres of land within the Barrett survey are held in fee, and concededly are not Indian property.  These tracts would not be governed by the federal rule announced by the Court of Appeals.

Wilson, 442 U.S. at 673–74 (internal citations and quotations omitted).

The Court sees no reason why this reasoning should not apply in this case as well.  The United States has failed to identify a need for a uniform federal law in the determination of the OHWM.  The fact that federal rules exist for a determination of the OHWM does not identify a need for them to be applied.  Applying state law would allow for land owners to be treated equally under uniform law.  It is only once a river has migrated from its initial course that the OHWM must again be determined.  It is certainly possible that rules adopted by either sovereign involved could work to the detriment of the other.  But since the federal courts would have jurisdiction over any dispute, federal interests are protected.  Fair treatment and impartial application of the applicable rules, whether state or federal, is what *Wilson* requires.  States have significant interests at stake when it comes to determining real property boundary disputes.  Determining the OHWM does not affect title but is simply a matter of finding boundaries.  Generalized concerns of unfair treatment under state law do not trump historic interests of the States in having their own law apply to property disputes.  Wilson, 442 U.S. at 674.  The only well articulated argument the United States has for applying federal law is a generalized fear of unfair treatment.  This generalized fear argument, which *Wilson* rejects, is why the Court finds the Interior Board of Land Appeals treatment of the issue unpersuasive.  195 IBLA 194, 216 (March 25, 2020) (noting a state could adopt a more expansive interpretation of the OHWM to the detriment of federal interests).  In this case, that fear is completely unfounded as state law defers to federal law insofar as far as non-patented public domain lands are concerned.  If the

Appellate Case: 23-2249     Page: 43     Date Filed: 05/22/2023 Entry ID: 5276922 May 22 2023 p 43

land in question was owned by private parties rather than the United States, state law would apply to make the OHWM determination.   Why then should state law not be borrowed to provide the rule of decision in this case?  Should the United States ever decide to patent the land in question, state law would apply to determine the location of the OHWM.  Finding no need for a uniform federal law in this area and based on its reading of *Wilson*, the Court concludes state law should be borrowed as the rule of decision in this case.

        **B.**       **N.D.C.C. § 61-33.1-06**

Having determined that federal law then looks to state law for the rule of decision in this case, the Court turns to N.D.C.C. § 61-33.1-06, the meaning of which is vigorously disputed. Section 61-33.1-06 of the North Dakota Century Code provides as follows:

> Notwithstanding any provision of this chapter to the contrary, the ordinary high water mark of the historical Missouri riverbed channel abutting nonpatented public domain lands owned by the United States must be determined by the branch of cadastral study of the United States bureau of land management in accordance with <u>federal law</u>.

N.D.C.C. § 61-33.1-06 (emphasis added).

The United States maintains this statutory provision requires the application of federal law to the disputed public domain lands.  The Land Board contends the federal law referenced in the statute borrows state criteria and the law violates the North Dakota constitution.[3]

Passed in 2017, the law went into effect on April 21, 2017.  The BLM published the Supplemental Plats in 2013 and 2014.  The Legislature referenced the Supplemental Plats in its definition of "Corps survey" in Section 61-33.1-01.   <u>See</u> N.D.C.C. § 61-33.1-01 (defining

---

[3]The State and the Land Board in *Sorum* took the position that Chapter 61-33.1 was constitutional in all regards under North Dakota's gift clause, water-course clause, privileges or immunities clause, and the local or special laws prohibition.

"Corps survey" to mean the Corps Segment Maps "as supplemented by the supplemental plats created by the branch of cadastral survey of the United States bureau of land management"). Clearly, the North Dakota Legislature was aware of these Supplemental Plats when it passed the law.  By providing that the OHWM was to "be determined by the branch of cadastral study of the United States in accordance with federal law," North Dakota state law adopted the OHWM determination in the Supplemental Plats as to the nonpatented public domain lands.

The Land Board's contentions otherwise are unpersuasive.  The North Dakota Supreme Court has clearly determined Section 61-33.1-06 does not violate North Dakota law or the North Dakota constitution.  Sorum, 947 N.W.2d at 396-400 (finding no violation of the gift clause, watercourse clause, privileges and immunities clause, the special laws prohibition, and the public trust doctrine).  The suggestion that the North Dakota Legislature meant state law when it said federal law violates basic concepts of statutory interpretation which require the language in an unambiguous statute to be given its plain and ordinary meaning.  Wilkinson II, 947 N.W.2d at 918.  The North Dakota Supreme Court has expressly stated "Chapter 61-33.1, N.D.C.C. is not ambiguous."  Id. at 921.  The Court finds nothing ambiguous about the phrase "federal law." The Court concludes that when the North Dakota Legislature said federal law it meant federal law.  Id. at 920 (noting "it must be presumed the legislator intended all that it said, said all that it intended to say, and meant what it has plainly expressed").  Otherwise the statute would be meaningless.  Therefore, pursuant to Section 61-33.1-06, the OHWM determination as to the disputed non-patented public domain lands must be determined by federal law, that being the Supplemental Plats.

## IV.   <u>CONCLUSION</u>

Appellate Case: 23-2249   Page: 45   Date Filed: 05/22/2023 Entry ID: 5276222 May 22 2023 p 45

Accordingly, the United States' motion for partial summary judgment (Doc No. 81) is **GRANTED** and the Land Board's motion for partial summary judgment (Doc. No. 83) is **DENIED**. The Court **ORDERS** and **DECLARES** the royalties on the non-patented public domain lands in dispute must be distributed based upon the determination of the historic OHWM as set forth in the BLM's Supplemental Plats.

**IT IS SO ORDERED**.

Dated this 8th day of December, 2020.

*/s/ Daniel L. Hovland*
Daniel L. Hovland, District Judge
United States District Court

18

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA

| | | |
|---|---|---|
| Continental Resources, Inc. | ) | |
| an Oklahoma corporation, | ) | |
| | ) | |
| Plaintiff, | ) | **ORDER GRANTING THE LAND** |
| | ) | **BOARD'S' MOTION FOR PARTIAL** |
| vs. | ) | **SUMMARY JUDGMENT** |
| | ) | |
| North Dakota Board of University | ) | |
| and School Lands and the United | ) | |
| States of America, | ) | Case No. 1:17-cv-014 |
| | ) | |
| Defendants. | ) | |

Before the Court are motions for partial summary judgment filed by both defendants on May 2, 2022, and May 23, 2022. See Doc. Nos. 105 and 107. The motions have been fully briefed and are ripe for consideration. See Doc. Nos. 106, 108, 110, and 112. For the reasons set forth below, the Land Board's motion for partial summary judgment is granted and the United States' motion for partial summary judgment is denied.

I.   **BACKGROUND**

This dispute stems from competing claims of mineral ownership due to a disagreement as to where the historic ordinary high-water mark ("OHWM") of the Missouri River is located. In late 2016, Continental Resources Inc. ("Continental Resources") brought this interpleader action against the North Dakota Board of University and School Lands ("Land Board") and the United States in the District Court of McKenzie County, Northwest Judicial District, North Dakota. Continental Resources is an oil and gas production company that leases minerals in western North Dakota from both North Dakota and the United States. The Land Board consists of the

1

North Dakota Governor, Secretary of State, Superintendent of Public Instruction, Treasurer, and Attorney General. The Land Board is charged with, among other things, managing North Dakota's minerals underlying sovereign lands. Continental Resources requested the state court order North Dakota and the United States to interplead their respective claims to royalties from the production of minerals on lands which each claim to own and have issued leases with overlapping acreage. The disputed minerals are described in an exhibit attached to Continental Resources' amended complaint. <u>See</u> Doc. No. 27-1. The United States removed the action to this Court on January 11, 2017. Millions of dollars in royalties are at stake and the royalties continue to accrue. Continental Resources does not claim an interest in any of the royalties. It brings this Rule 22 interpleader action simply to avoid being subject to duplicate liability for royalty obligations attributable to the disputed lands. Continental Resources is holding the disputed royalties in escrow at the direction of the Court, pending a final determination on the merits.

The Missouri River in North Dakota is a navigable river but not a state boundary. In 1889, North Dakota was admitted to the Union and acquired title, pursuant to the equal footing doctrine, to the bed of the Missouri River, including the underlying minerals, up to the OHWM. To document the location of the Missouri River's OHWM, and thus delineate the boundary between state-owned riverbed and federally-owned uplands, the General Land Office (predecessor to the Bureau of Land Management "BLM") prepared and filed cadastral surveys between 1891 and 1901, using the Manual of Surveying Instructions in effect at the time. The meander line identified in these surveys marked the OHWM at the time.

Rivers, especially large navigable rivers, such as the Missouri River, are dynamic.  They change course through erosion, accretion, and avulsion, and when they do the OHWM changes as well.  Rivers also flood and Missouri River flooding was particularly bad in the first half of the twentieth century.  So Congress passed the Flood Control Act of 1944, which authorized the United States Army Corps of Engineers ("Corps") to construct the Garrison Dam on the main stem of the Missouri River in North Dakota as part of the Pick-Sloan Missouri basin project dams.  Several other dams along the Missouri River were constructed as well.  The waters impounded by the Garrison Dam created Lake Sakakawea, one of the largest reservoirs in the United States.  Garrison Dam was completed in 1953.  Once the Garrison Dam was completed and Lake Sakakawea began to form, the portion of the Missouri River underlying Lake Sakakawea ceased its wanderings and the OHWM became fixed.  This fixed, but hotly contested, OHWM is known as the historic OHWM.

By the time construction of the Garrison Dam got underway, many of the uplands (lands above the OHWM) that would be inundated by Lake Sakakawea had been patented and passed from the federal public domain to private landowners.  Before the dam was constructed, the Corps surveyed the privately-owned land which was expected to be inundated and would need to be acquired by the United States.  The resulting survey maps are known as the "Corps Segment Maps."  The Corps Segment Maps depict the riverbed and OHWM as it existed in 1952.  Where the Corps was able to acquire the privately-owned lands that it needed through a voluntary sale, it allowed the landowners to reserve the underlying minerals.  However, where the Corps was forced to rely on the power of eminent domain, it acquired both the surface estate and the

3

associated mineral estate.  These lands which were acquired by the United States from private parties are referred to as "acquired lands."

Not all of the land inundated by Lake Sakakawea was owned by private parties.  Some of the land was owned by the United States.  At the time, the United States still held title to public domain uplands above the historic OHWM of the Missouri River that had never left the possession of the United States since they were acquired from France in 1803.  These lands, which have never been patented or left federal ownership, are referred to as "retained public domain lands" or "non-patented public domain lands" or simply "public domain lands."  As a result, the surface estate of the former uplands now submerged by Lake Sakakawea is owned by the United States and consists of a mix of "retained public domain lands" and "acquired lands."  The mineral estate in those former uplands consists of a mix of retained public domain mineral interests and acquired mineral interests which belong to the United States and mineral interests that remain in private ownership.  The State of North Dakota retains all the mineral interests underlying the riverbed up to the historic OHWM.

Prior to the Bakken oil boom which began around 2005, the exact location of the submerged riverbed was a question of only historical significance.  However, with the advent of modern oil and gas drilling technology, and Lake Sakakawea's location in the Bakken oil fields, the submerged riverbed's historic OHWM has taken on new importance.  The United States owns now submerged lands upland of the historic OHWM of the Missouri River.  Its interests extend down to the historic OHWM.  Pursuant to the equal footing doctrine, North Dakota owns the riverbed, including the mineral estate, up to the historic OHWM.  With the United States and North Dakota at odds over the location of the historic OHWM, more surveys were conducted.

4

In 2010, the Land Board hired a private engineering firm, Bartlett & West, to conduct a survey of the Missouri River.  The final report was completed in 2011.[1]  Bartlett & West conducted its analysis in compliance with Ordinary High Water Mark Delineation Guidelines issued by the North Dakota State Engineer in 2007.  The study did not utilize the Corps Segment Maps.  Since completion of the Bartlett & West study, the Land Board has leased North Dakota's mineral interests underlying the bed of the Missouri River consistent with the study's determination of the historic OHWM.  Prior to the Bartlett & West study, North Dakota's minerals were leased based upon aerial photographs and ground surveys.

In 2013, the BLM prepared Supplemental Plats to reflect the OHWM of the retained public domain lands in the vicinity of Lake Sakakawea to account for the movement of the Missouri River between the original cadastral surveys conducted in the late nineteenth and early twentieth centuries and the impoundment of Lake Sakakawea in the 1950s.  The Supplemental Plats do not address acquired lands.  The Supplemental Plats do not show the boundary between state-owned riverbed and any other riparian property, whether privately held or federally acquired.  The BLM determined the Corps Segment Maps were the most comprehensive evidence of the Missouri River's location just prior to impoundment and the best evidence of the historic OHWM relative to acquired lands.  The Supplemental Plats were created by overlaying the Corps Segment Maps on the original turn of the century surveys.  The Supplemental Plats show the official position of the United States as to the historic OHWM of the Missouri River prior to the formation of Lake Sakakawea.  The Supplemental Plats show the boundary between the now submerged federal public domain uplands and State riverbed along portions of the

---

[1] The Bartlett & West report is available at:
https://www.land.nd.gov/sites/www/files/documents/Minerals/OHWM2/ohwm%20report.pdf.

5

Missouri River in North Dakota. The BLM published the Supplemental Plats in late 2013 and early 2014. North Dakota protested the Supplemental Plats because the BLM applied federal law rather than state law in making its OHWM determination. The State contended the application of federal law led to an inaccurate OHWM boundary in the Supplemental Plats which resulted in some lands being shown as federally-owned uplands above the OHWM rather than state-owned riverbed below the OHWM. The BLM rejected the protest. North Dakota appealed. The Interior Board of Land Appeals ("IBLA") rejected North Dakota's appeal, finding "[f]ederal law applies to BLM's determination of the OHWM along retained Federal riparian property, and state law should not be borrowed." 195 IBLA 194, 216 (March 25, 2020). This determination meant the boundary between state and retained federal lands would be determined as shown in the Supplemental Plats.

In April 2017, following the filing of this action and while the IBLA proceeding was pending, North Dakota enacted Chapter 61-33.1 of the North Dakota Century Code to address state ownership of the bed of the Missouri River. In litigation with private mineral owners regarding lands whose surface estate had previously been sold to the United States to construct the Garrison Dam, the Land Board claimed "title to the bed of the Missouri River up to the current ordinary high water mark." See Wilkinson v. Bd. of Univ. & School Lands, 903 N.W.2d 51, 54 (N.D. 2017) ("Wilkinson I") (emphasis added). Chapter 61-33.1 rejected this view and made clear that "state sovereign land mineral ownership of the riverbed segments subject to inundation by Pick-Sloan Missouri Basin project dams extends only to the historical Missouri riverbed channel up to the ordinary high water mark." N.D.C.C. § 61-33.1-02 (emphasis added); see also N.D.C.C. § 61-33.1-01 (defining "[h]istorical Missouri riverbed channel" as the riverbed

as it existed when the Pick-Sloan Plan dams were closed to begin impounding the Missouri River).

Section 61-33.1-03(1) provided that, for lands other than non-patented public domain lands, including the disputed acquired lands, the "Corps survey must be considered the presumptive determination of the ordinary high water mark of the historical Missouri riverbed channel," subject to a review process set forth in the statute.  N.D.C.C. § 61-33.1-03(1); see also N.D.C.C. § 61.33.1-01 ("'Corps survey' means the last known survey conducted by the army corps of engineers in connection with the corps' determination of the amount of land acquired by the corps for the impoundment of Lake Sakakawea and Lake Oahe, as supplemented by the supplemental plats created by the branch of cadastral survey of the United States bureau of land management").

For non-patented public domain lands owned by the United States, on the other hand, the OHWM of the historic Missouri River on these lands "must be determined by the branch of cadastral study of the United States bureau of land management in accordance with federal law." N.D.C.C. § 61-33.1-06.  Chapter 61-33.1 is retroactive to the date of the closure of the Pick-Sloan dams save for the OHWM determination which is retroactive to all oil and gas wells spud after January 1, 2006, for purposes of oil and gas mineral and royalty ownership.  2017 N.D. Sess. Laws Ch. 426, § 4.

In Chapter 61-33.1, the North Dakota Legislature commissioned an additional study.  See N.D.C.C. § 61-33.1-03(2).  The study was completed by Wenck Associates, Inc. in 2018.[2]  The Wenck Report determination of the OHWM was made in accordance with the parameters set

---

[2]The Wenck Report is available at:
https://www.dmr.nd.gov/OrdinaryHighWaterMark/docs/2018-10-03_Amended_Final_OHWM_Report.pdf

forth in the enabling legislation.  See N.D.C.C. § 61-33.1-03(3).  The Bartlett & West Report OHWM determination is favorable to North Dakota, while the OHWM determination in the Supplemental Plats and Corps Segment Maps favors the United States.  The Wenck Report occupies the middle ground between the Bartlett & West Report and the Supplemental Plats and Corps Segment Maps in its determination of the OHWM.

Suffice it to say Chapter 61-33.1 proved controversial.  In January of 2018, a group of North Dakota taxpayers challenged the law, contending it was unconstitutional.  The plaintiffs' complaint alleged that Chapter 61-33.1 "unconstitutionally gives away State-owned mineral interests to 108,000 acres underneath the OHWM of the Missouri River/Lake Sakakawea, and above the Historic OHWM and gives away over $205 million in payments, in violation of the Constitution of the State of North Dakota."  Sorum v. State, 947 N.W.2d 382, 388 (N.D. 2020). On July 30, 2020, the North Dakota Supreme Court issued an opinion finding Chapter 61-33.1 did not violate the North Dakota constitution's gift clause, watercourses clause, privileges or immunities clause, the local and special laws prohibition, and the public trust doctrine.  Id. at 390-400 (noting the State recognized in Chapter 61-33.1 that it had an obligation to pay its debts and deal fairly with its citizens).  On August 27, 2020, the North Dakota Supreme Court in Wilkinson v. Bd. of Univ. & School Lands, 947 N.W.2d 910, 920-21 (N.D. 2020) ("Wilkinson II") found Chapter 61-33.1 was not ambiguous and applied to the land in question which was above the OHWM of the historical Missouri riverbed channel and was not state sovereign lands. The case was remanded to the state district court for a determination of damages on the royalties the state had unfairly claimed.  Id. at 920.

The partial motions for summary judgment now before the Court pertain only to the "acquired lands" which are those lands that left federal ownership and were later reacquired by the United States from private parties. The Court previously issued a ruling pertaining to the non-patented public domain lands finding that while federal law governed, federal law borrowed state law as the rule of decision, and the relevant State law adopted the BLM's Supplemental Plats as delineating the historical OHWM. See Doc. No. 92.

## II.    STANDARD OF REVIEW

Summary judgment is appropriate when the evidence, viewed in a light most favorable to the non-moving party, indicates that no genuine issues of material fact exist and that the moving party is entitled to judgment as a matter of law. Davison v. City of Minneapolis, 490 F.3d 648, 654 (8th Cir. 2007); see Fed. R. Civ. P. 56(a). Summary judgment is not appropriate if there are factual disputes that may affect the outcome of the case under the applicable substantive law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). An issue of material fact is genuine if the evidence would allow a reasonable jury to return a verdict for the non-moving party. Id. The purpose of summary judgment is to assess the evidence and determine if a trial is genuinely necessary. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

The Court must inquire whether the evidence presents a sufficient disagreement to require the submission of the case to a jury or whether the evidence is so one-sided that one party must prevail as a matter of law. Diesel Mach., Inc. v. B.R. Lee Indus., Inc., 418 F.3d 820, 832 (8th Cir. 2005). The moving party bears the responsibility of informing the court of the basis for the motion and identifying the portions of the record which demonstrate the absence of

a genuine issue of material fact.  Torgerson v. City of Rochester, 643 F.3d 1031, 1042 (8th Cir. 2011).  The non-moving party may not rely merely on allegations or denials in its own pleading; rather, its response must set out specific facts showing a genuine issue for trial.  Id.; Fed. R. Civ. P. 56(c)(1).  If the record taken as a whole and viewed in a light most favorable to the non-moving party could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial and summary judgment is appropriate.  Matsushita, 475 U.S. at 587.

## III.  LEGAL DISCUSSION

The pending motions for partial summary judgment present three closely related issues as to the disputed acquired lands: (1) the first issue is whether state law or federal law governs the determination of the historical OHWM; (2) if the answer to the first question is that federal law applies then the second question that must be addressed is whether federal law borrows state law as the rule of decision; and (3) the third issue is the applicability of N.D.C.C. Ch. 61-33.1 to the disputed acquired lands.  The Court previously addressed the status of the public domain lands which are not at issue in the current motions.  See Doc. No. 92.  The Court will address each question in turn.

### A.  CHOICE OF LAW

The United States contends federal law must be applied in order to determine the OHWM of the historic Missouri River abutting the disputed acquired lands.  The Land Board contends state law governs the determination.

Under the equal footing doctrine, upon statehood, States acquire absolute title "to the beds of waters then navigable" within their borders. See PPL Montana, LLC v. Montana, 565 U.S. 576, 591 (2012). Such was the rule for the thirteen original States and all subsequent States as coequals under the Constitution. Id. All States hold "absolute right to all their navigable waters and the soils under them." Id. at 590. State title to these lands is "conferred not by Congress but by the Constitution itself." Id. at 591. Since title is conferred to the States by the Constitution itself, no Congressional land grant to a third party can defeat State title. Oregon ex rel. State Land Board v. Corvallis Sand & Gravel Co., 429 U.S. 363, 374 (1977). In Corvallis, the Supreme Court held that state law should be applied to determine whether Oregon or an Oregon corporation owned certain portions of the riverbed of the Williamette River. Id. at 365. The United States Supreme Court explained that the initial boundary between the riverbed and the uplands is determined by federal law. Id. at 370-71. But "thereafter the role of the equal-footing doctrine is ended, and the land is subject to the laws of the State" "unless there were present some other principle of federal law requiring state law to be displaced." Id. at 376, 371. This general rule from Corvallis does not apply where the "United States has never yielded title or terminated its interest." Wilson v. Omaha Indian Tribe, 442 U.S. 653, 670 (1979). The Supreme Court rejected the idea that because land had originally been patented by the United States federal law continued to apply. Corvallis, 429 U.S. at 372.

In this case, there is no dispute that title to the acquired lands has passed out of federal hands and into private hands and then was reacquired by the United States. Whenever "title shall have passed, then that property, like all other property in the state, is subject to state legislation." Corvallis, 429 U.S. at 377. Once title passes under the equal footing doctrine,

Appellate Case: 23-2249     Page: 57     Date Filed: 05/22/2023 Entry ID: 5276622

"state law governs subsequent dispositions." Id. at 378. Thus, State law must be applied in this case to determine the historical OHWM as to the acquired lands in question.

The contention of the United States that federal law should govern this determination relies upon the Supreme Court's opinion in *California ex rel. State Lands Comm'n v. United States*, 457 U.S. 273, 283 (1982). *California ex rel. State Lands Comm'n,* involved a suit by California to quiet title in oceanfront land created by accretion to land owned by the United States. Id. at 275. The central issue was whether state law or federal law governed the determination. The construction of two jetties and resulting accretion had caused one hundred eighty-four acres of upland to be created by the seaward movement of the OHWM of the Pacific Ocean. Id. at 275-76. Citing *Wilson*, the Supreme Court found federal law applied because the case involved "a dispute over accretions to oceanfront land where title rests with or was derived from the Federal Government." Id. at 283. The Supreme Court went on to hold that the case was not one where state law should be borrowed as the rule of decision because a federal statute controlled the determination. Id. at 283. The Supreme Court explained that a provision of the federal Submerged Lands Act withholding accretions to coastal lands from grants to the States meant "borrowing for federal-law purposes a state rule that would divest federal ownership is foreclosed." Id. at 283-84. *Wilson* was distinguished because that case involved "no special federal concerns, let alone a statutory directive," which required a federal common-law rule. Id. at 284.

The Court finds *California ex rel. State Lands Comm'n* is easily distinguishable and of little precedential value to the present case. The dispute involved the accretion of oceanfront property to which the United States had never yielded title, application of a relevant federal

statute (the Submerged Lands Act), and the special nature of a coastal boundary.  The present case does not involve any of these circumstances.  *California ex rel. State Lands Comm'n* did not involve land to which the United States yielded title and then reacquired, the equal footing doctrine, or the historical OHWM of a submerged riverbed of a navigable river.  The Court concludes as a matter of law that *Corvallis,* rather *California ex rel. State Lands Comm'n,* controls the determination of whether state law or federal law applies to the acquired lands at issue in this case.  Even if the Court agreed with the United States that federal law controls, the Court would find, for all of the reasons set forth in the Court's prior order relating to the non-patented public domain lands, that state law supplies the rule of decision.  See Doc. No. 92, pp. 13-16; see also Wilson, 442 U.S. at 672 (finding state law should be borrowed as the federal rule of decision and questions of land ownership within or adjacent to the Missouri River are best settled by reference to state law "even where Indian trust land, a creature of federal law, is involved").

### B.   <u>STATE LAW</u>

This case is an interpleader action related to a boundary dispute.  The United States and North Dakota have made competing demands against Continental Resources to the royalties from certain tracts of land described in an attachment to Continental's amended complaint.  See Doc. No. 27-1.  This boundary dispute can only be settled by deciding whether state law or federal law applies to determine the historic OHWM of the Missouri River relative to the disputed tracts of land.  The Court has determined state law applies as to the "acquired lands."

Appellate Case: 23-2249    Page: 59    Date Filed: 05/22/2023 Entry ID: 5273622  May 22 2023 p 59

The more pressing question is exactly what state law applies?  The United States contends that any application of State law should be limited to state substantive law.  The Land Board contends state substantive law applies, including the judicial and administrative processes described in Chapter 61-33.1 of the North Dakota Century Code.  This is not a Quiet Title action or declaratory judgment action.  The federal court would clearly have jurisdiction over any such dispute.  Wilson, 442 U.S. at 673-74.  The Court's determination in this interpleader action is limited to the disputed lands and royalties as listed in the amended complaint and the competing liens claimed by the United States and the State of North Dakota.  See Doc. No. 27.  The competing determinations as to the disputed royalties have already been made.  Under state law, that determination was made by the Wenck Report.  Had the Court determined federal law applied, the royalties would be allocated based upon the Corps Segment Maps.[3]  There has been no suggestion by the United States in this interpleader action that the application of state substantive law as reflected in the Wenck Report was incorrect or unfair.  The Court finds as a matter of law that state substantive law applies to determine the historical OHWM relative to the acquired lands as set forth in the Wenck Report.

IV.   **CONCLUSION**

Accordingly, the Land Board's motion for partial summary judgment (Doc No. 105) is **GRANTED** and the United States' motion for partial summary judgment (Doc. No. 107) is

---

[3]It is important to remember that the 2013 Supplemental Plats only address the non-patented public domain lands and do not address the acquired lands.  This leaves the 1952 Corps Segment Maps as the best federal evidence of the historical OHWM as to the acquired lands.  North Dakota law in Ch. 61-33.1 adopted the Supplemental Plats as the historical OHWM in relation to the non-patented public domain lands while commissioning the Wenck Report for a determination relevant to the acquired lands.  The curious failure of both the United States and North Dakota to file a Quiet Title action leaves us where we are today.

Appellate Case: 23-2249   Page: 60   Date Filed: 05/22/2023 Entry ID: 5276622   May 22 2023 p 60

**DENIED**.  The Court **ORDERS** and **DECLARES** the royalties on the acquired lands in dispute must be distributed based upon the determination of the historic OHWM of the Missouri River as determined by the substantive law of the State of North Dakota as set forth in the Wenck Report.

**IT IS SO ORDERED**.

Dated this 21st day of March, 2023.

/s/ Daniel L. Hovland
Daniel L. Hovland, District Judge
United States District Court

15

Local AO 450 (rev. 1/23)

# United States District Court
### *District of North Dakota*

Continental Resources, Inc.
an Oklahoma corporation,

       Plaintiff,

JUDGMENT IN A CIVIL CASE

  vs.

Case No.    1:17-cv-014

North Dakota Board of University and School
Lands and the United States of America.

---

☐ **Jury Verdict**.  This action came before the Court for a trial by jury.  The issues have been tried and the jury has rendered its verdict.

☐ **Decision by Court**.  This action came to trial or hearing before the Court.  The issues have been tried or heard and a decision has been rendered.

☑ **Decision on Motion**.  This action came before the Court on motion.  The issues have been considered and a decision rendered.

☐ **Stipulation**.  This action came before the court on motion of the parties.  The issues have been resolved.

☐ **Dismissal**.  This action was voluntarily dismissed by Plaintiff pursuant to Fed. R. Civ. P.  41(a)(1)(ii).

## IT IS ORDERED AND ADJUDGED:

Pursuant to the Courts Order dated December 8, 2020, the United States' motion for partial summary judgment (Doc No. 81) is GRANTED and the Land Board's motion for partial summary judgment (Doc. No. 83) is DENIED. The Court ORDERS and DECLARES the royalties on the non-patented public domain lands in dispute must be distributed based upon the determination of the historic OHWM as set forth in the BLM's Supplemental Plats.

Pursuant to the Court's Order dated March 21, 2023, the Land Board's motion for partial summary judgment (Doc No. 105) is GRANTED and the United States' motion for partial summary judgment (Doc. No. 107) is DENIED. The Court ORDERS and DECLARES the royalties on the acquired lands in dispute must be distributed based upon the determination of the historic OHWM of the Missouri River as determined by the substantive law of the State of North Dakota as set forth in the Wenck Report.

Date:   March 21, 2023

KARI M. KNUDSON, CLERK OF COURT

by:    */s/ Melissa Fischer, Deputy Clerk*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA
WESTERN DIVISION

| | | |
|---|---|---|
| Continental Resources, Inc., an Oklahoma corporation, | ) ) ) | Case No.: 1:17-CV-00014-DLH |
| Plaintiff, | ) ) ) ) | **UNITED STATES' NOTICE OF APPEAL** |
| v. | ) ) ) | |
| North Dakota Board of University and School Lands, and the United States of America, | ) ) ) ) | |
| Defendants. | ) ) ) ) | |
| _____ | ) | |

Notice is hereby given that Defendant, United States of America, in the above-captioned matter, appeals to the United States Court of Appeals for the Eighth Circuit the Judgment entered on March 21, 2023 (ECF No. 115), and the underlying orders encompassed within it, including the orders dated December 31, 2018 (ECF No. 49), December 8, 2020 (ECF No. 92), and March 21, 2023 (ECF No. 114).

Respectfully submitted this 22nd day of May, 2023,

TODD KIM
Assistant Attorney General
Environment and Natural Resources Division

_/s/ Shaun M. Pettigrew_
SHAUN M. PETTIGREW
Senior Trial Attorney
Natural Resources Section
c/o NOAA, Damage Assessment
7600 Sand Point Way, NE
Seattle, WA 98155

Phone: (206) 526-6881
shaun.pettigrew@usdoj.gov

*Counsel for United States of America*

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on May 22, 2023, I electronically filed the foregoing with the Clerk

of Court by using the CM/ECF system.  Counsel of record currently identified on the Mailing

Information list to receive e-mail notices for this case are served via Notices of Electronic Filing

generated by CM/ECF.


/s/ *Shaun M. Pettigrew*
Shaun M. Pettigrew
Trial Attorney

## U. S. COURT OF APPEALS - EIGHTH CIRCUIT
## NOA SUPPLEMENT

*Please note any additions or deletions to the style of the case from the style listed on the docket sheet.*

Case No.  1:17-cv-14                    Continental Resources, Inc. v. North Dakota Board of

University and School Lands and United States of America

Length of trial:   None

Financial Status:        Fee Paid?                                    ☐ Yes    ☑ No
                         If **NO**, has IFP been granted?             ☐ Yes    ☑ No
                         Is there a pending motion for IFP?           ☐ Yes    ☑ No

Are there any other pending post-judgment motions?      ☐ Yes    ☑ No

Please identify the court reporter:        ☑ No hearings held

        Name:

        Address:

        Telephone Number:

Criminal cases only:
        Is the defendant incarcerated?      ☐ Yes (include address below)      No ☐

        Please list all other defendants in this case if there were multiple defendants.

**SPECIAL COMMENTS:**

Notice of Appeal filed by the United States of America. Filing fee is waived.

Status conferences held on: June 7, 2017, August 8, 2017, January 13, 2020, and April 7, 2020